2011 UT 6

**Branson G. NEFF, Plaintiff, Appellant and Cross–Appellee,**

v.

**Marvin G. NEFF; Travis L. Bowen, Esq.; Travis L. Bowen, P.C.; ABCo Construction, Inc.; and WESTCo, Defendants, Appellees and Cross–Appellants.**

No. 20080850.

Supreme Court of Utah.

Jan. 14, 2011.

James E. Magleby, Christopher M. Von Maack, Salt Lake City, for appellant/cross-appellee.

Marlin J. Grant, James C. Jenkins, Logan, for appellees/cross-appellants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 The parties in this case, Branson and Marvin Neff,[1] are brothers and one-time business partners. This case initially arose from the brothers' alleged wrongdoing toward one another in the context of their joint business venture and their attempt to dissolve their business relationship. Litigation before the district court lasted for more than six years, during which time the case grew to encompass a dispute over Branson's alleged mismanagement of a family trust established by the brothers' parents. After a physical altercation between the brothers and Branson's arrest on related charges, the case also came to include claims for assault and battery and malicious prosecution. Other claims were raised and resolved over the years, but as the case is presented to us, these are the key disputes underlying the questions on appeal.

¶ 2 We are asked to resolve three questions. First, the trial court entered summary judgment against Branson on his claim for malicious prosecution on the bases that Branson had not established that the prosecution was initiated in the absence of probable cause and that Branson failed to establish that Marvin acted with malice. The trial court found that the existence of probable cause was an undisputed fact because the magistrate judge in Branson's criminal proceedings found the existence of probable cause when it bound Branson over for trial.

¶ 3 On appeal, Branson argues that the magistrate's finding of probable cause at the time of trial does not conclusively establish that Marvin had probable cause to initiate proceedings against Branson. He also argues that summary judgment was inappropriate because he had established sufficient facts to give rise to an inference that Marvin acted with malice. We need not address the merits of Branson's arguments because we

affirm the trial court on an alternative basis. Specifically, we hold that summary judgment was appropriate because Branson entered into a plea in abeyance agreement with regard to the criminal charges. Since termination of criminal proceedings in favor of the accused is an element of a claim for malicious prosecution, this plea in abeyance independently defeats Branson's claim.

¶ 4 Second, Marvin argues that the trial court erred in determining which of the brothers was the prevailing party for purposes of awarding attorney fees. Marvin sought attorney fees based on the fact that he obtained jury verdicts and awards of nominal damages in his favor with regard to claims against Branson for assault and battery and breach of contract. He also successfully defeated many of the claims raised by Branson. And at a separate trial related to Branson's administration of a family trust, Marvin also obtained a money judgment in the amount of approximately $27,000 plus interest. Marvin's successes were partially offset by awards to Branson. Given the multitude of claims raised and the relatively minimal success achieved by either brother, the trial court found that neither party should be considered to have prevailed for purposes of awarding attorney fees.

¶ 5 On appeal, Marvin challenges this determination for a number of reasons. Chiefly, he argues that the trial court failed to account for the fact that Marvin successfully defended against a number of claims, which, while not reflected in the dollar value of his recovery, were nevertheless important indicators of his relative success. He also argues that, for certain procedural reasons, he was not given a proper opportunity to move the court for attorney fees on the claims related to the family trust. We hold that the trial court correctly considered the whole scope of litigation when it made its determination and that, because it had a reasonable basis for refusing to award attorney fees, it did not abuse its discretion when it awarded fees to neither party.

1. Because the parties to this case share the same last name, we follow their example and refer to them by their first names.

¶ 6 Third, we are asked to examine whether the trial court correctly granted JNOV with regard to jury verdicts in Branson's favor on claims of slander of title and breach of fiduciary duty. The jury verdicts with regard to these claims were somewhat ambiguous because, while the jury indicated that it found that Marvin had slandered Branson's title and breached a fiduciary duty to Branson, the jury also found that Branson suffered $0 in damages related to these harms. When asked with regard to these same claims whether Marvin should be required to pay Branson's attorney fees, the jury responded affirmatively. The trial court granted JNOV with regard to both claims on the basis that the jury was only prompted to address attorney fees if they entered a finding of damages and that, since they found $0 in damages, the jury incorrectly reached the attorney fees question.

¶ 7 On appeal, Branson argues that the trial court misinterpreted the jury's verdict and that the jury intended to award attorney fees *as* special damages. We conclude that the trial court erred when it entered JNOV on Branson's claim for slander of title because attorney fees reasonably incurred to remove clouds from title can form the basis of a damages award in a slander of title case. But because attorney fees standing alone cannot form the basis of damages in a claim for breach of fiduciary duty, the trial court did not err when it granted JNOV with respect to the jury's finding of breach of fiduciary duty.

¶ 8 Accordingly, we reverse the trial court's entry of JNOV on Branson's claim for slander of title. We affirm the trial court's judgment in all other respects.[2] The case is remanded for a determination of the amount of attorney fees reasonably incurred in removing from Branson's title the clouds that gave rise to his slander of title claim.

BACKGROUND

## I. THE DISPUTE REGARDING DISSOLUTION OF THE BROTHERS' BUSINESS

¶ 9 For more than two decades, Branson and Marvin Neff were co-owners of a construction business. This business relationship ended in 1999, when the brothers hired an attorney to help them negotiate and draft an agreement to divide their interests in the business.[3] At that time, the brothers' joint venture consisted of a number of business entities and pieces of property. For purposes of this appeal, it is sufficient to say that the brothers were co-owners of a parcel of land situated in Box Elder County and two construction companies, ABCo Construction, Inc., and WESTCo, Inc.

¶ 10 A dispute arose because Branson believed he never received a number of benefits to which he was entitled under the dissolution agreement. He brought suit seeking an accounting of the value of ABCo and WESTCo and alleging, essentially, that negotiations of the dissolution agreement were tainted by a number of fraudulent representations made by Marvin. Branson also sought rescission of the dissolution agreement, alleging that, even in the absence of fraud, the contracts that made up the dissolution agreement were unenforceable. Alternatively, were the dissolution agreement to be deemed enforceable, Branson sought recovery for breach of contract based on Marvin's alleged failure to meet his obligations under the dissolution agreement. Specifically, he alleged that the agreement required Marvin to transfer to him certain sums of money and to pay certain of his health- and life-insurance premiums. Among other things, Marvin had also allegedly agreed to make mortgage payments on certain property, to pay Branson

2. Marvin raised two other issues on appeal that we do not address because they have been settled. Specifically, Marvin argued that the trial court's judgment inadvertently denied him a portion of his net recovery because of a clerical error. Marvin also argued that the trial court used the incorrect accrual dates for calculating the amount of prejudgment interest to which he was entitled. The parties settled these issues prior to filing their reply briefs before this court.

Because this settlement renders the issues moot, *see Baker v. Stevens,* 2005 UT 32, ¶ 6, 114 P.3d 580, we do not address them on appeal.

3. In addition to suing one another, each of the brothers sued their attorney for malpractice. Those claims have been independently resolved and are not at issue in this appeal.

the value of a second life insurance policy, and to let Branson use company-owned equipment for personal use.

¶ 11 One component of the dissolution agreement is of special importance. According to Branson, before the end of their business dealings, the brothers had been co-owners of a piece of property in Box Elder County. In 1978, two parcels of this land, which the brothers refer to as the "farm property," were excised, with one parcel being transferred to each brother. On these separately owned pieces of land, each of the brothers built a home. The brothers remained co-owners of the undivided parcel. Under the dissolution agreement, Branson alleges that the undivided parcel of farm property was supposed to be transferred back to him.[4] Branson alleged that as part of the transfer he was required to sign quitclaim deeds to his home so that title to all of the relevant land could be united in a single owner before the ultimate redistribution under the terms of the brothers' agreement. According to Branson, these deeds were not meant to be recorded until all of the documents necessary for the negotiated-for transfer of all relevant property could be accomplished. In spite of this, Branson alleged, Marvin caused these quitclaim deeds to be recorded, which Branson alleged constituted slander of his title to his home. When Branson later amended his complaint, he also raised a quiet title claim related to this land.

¶ 12 In addition to these claims, Branson also argued that he had been damaged by Marvin's actions while the brothers were in business together. He claimed that Marvin had breached a fiduciary duty owed to him by misappropriating company funds and business opportunities for Marvin's personal benefit. Based on this alleged wrongdoing, he also brought claims against Marvin for conversion and money had and received. Finally, Branson sought declaratory judgment regarding the enforceability of a salary-continuation agreement entered into while he and Marvin were still conducting business together. According to Branson, this agree-ment provided that he would continue receiving an annual salary for up to ten years after he stopped working at age sixty-seven. Alleging that Marvin had declared an intent not to honor this agreement, Branson sought a declaratory judgment that the claim was enforceable.

¶ 13 Marvin filed a counterclaim against Branson that, in large part, mirrored Branson's complaint. He alleged that Branson had breached the contracts associated with the dissolution agreement because Branson had failed to facilitate the property transfers to Marvin and because Branson had misrepresented the attributes and value of some of the property. Among other things, Marvin also alleged that Branson failed to make certain payments to the company that he had agreed to make and had failed to complete certain projects, the profits from which were supposed to be contributed to the brothers' company under the dissolution agreement. Marvin also alleged that Branson had intentionally interfered with economic relations by disparaging ABCo, trespassing on ABCo property, and threatening to destroy ABCo equipment. Marvin also claimed that Branson had breached a fiduciary duty to Marvin by, among other things, misappropriating company money to pay himself and his family and by taking payments on behalf of ABCo that he then retained for personal use without reporting to the company.

¶ 14 Marvin also brought claims for assault and battery, defamation, intentional infliction of emotional distress, and invasion of privacy. These claims were largely based on allegations that Branson had threatened to kill Marvin and that Branson maliciously made false statements about Marvin, alleging moral turpitude and incompetency and dishonesty in his business dealings.

## II. THE DISPUTE REGARDING THE BROTHERS' ASSAULTS OF ONE ANOTHER AND MARVIN'S ALLEGED MALICIOUS PROSECUTION OF BRANSON

¶ 15 After the parties entered the dissolution agreement, but before the complaint in

---

4. Marvin was to be the recipient of other pieces of farm property owned by the brothers' con-struction companies.

this case was filed, Marvin had successfully obtained a protective order against Branson. This order was granted in response to an incident where Branson confronted Marvin at the ABCo offices about Marvin's alleged failure to comply with the terms of the brothers' dissolution agreement. The exchange was heated, and police intervened. Branson was arrested and cited for assault. Shortly thereafter, Marvin sought and obtained a restraining order against Branson.

¶ 16 This restraining order was still in effect when another altercation occurred on January 26, 2005.[5] On that evening, Branson was driving home and passed Marvin's house. As Branson passed Marvin's home, he saw Marvin in the road. To avoid confronting Marvin, Branson attempted to speed up and drive past him. Marvin waved at Branson to stop. Branson interpreted this gesture to mean that there was an emergency. As soon as Branson stopped and rolled down his window to ask Marvin what he needed, Marvin reached through Branson's open truck window and struck Branson twice, resulting in bleeding wounds on Branson's face. Branson accelerated to escape. But Marvin grabbed onto the steering wheel so that he was carried on the outside of the truck over a short distance. Eventually, Branson stopped the truck and Marvin dismounted.

¶ 17 Branson also submitted an affidavit from a neighbor who testified that he saw Marvin walking away from the altercation apparently unharmed, but then lying face down in the road and scuffling around in dirt and gravel near the road. This neighbor also testified that Marvin faked being injured on the day after the altercation.

¶ 18 Marvin called the police to report the incident. When the police responded to Branson's home, they arrested Branson for violating the protective order. He was later charged with aggravated assault based on the incident. His conduct toward the arresting officers also led to charges of assault against a police officer and interfering with an arresting officer. The charge of assault against a police officer was later dismissed.

¶ 19 Branson entered into a plea in abeyance agreement with respect to these charges. Specifically, the aggravated assault charge was dismissed, but Branson pleaded guilty to violating a protective order and interfering with an arresting officer. Under the terms of the plea agreement, Branson's guilty plea was to be held in abeyance for three years, at which time, if the conditions of the plea were met, the charges would be dismissed. Notably, the circumstances surrounding the dismissal of the aggravated assault charge are disputed. Marvin presented evidence, in the form of a letter from the prosecutor in Branson's criminal case, suggesting that the aggravated assault charge was dismissed only temporarily and would be refiled after the brothers' lawsuit against one another was complete. Branson argues that the aggravated assault charge was dismissed voluntarily and not as a component of his plea agreement.

¶ 20 Before the entry of Branson's guilty pleas, the court conducted a preliminary hearing wherein it determined that sufficient probable cause existed to support prosecution of Branson for the charged offenses.

¶ 21 In response to this incident, each of the brothers amended his complaint.[6] Marvin supplemented the facts underlying his claim of assault and battery so that the claim also encompassed this alleged incident of assault. Branson added a claim for battery and a claim for malicious prosecution.

---

**5.** Many of the facts surrounding this incident remain disputed. Because this appeal arises from the district court's grant of summary judgment in favor of Marvin, we recite the facts relevant to this incident in the light most favorable to Branson.

**6.** Each of the brothers also added other claims at this time. The only importance of these claims on appeal is how they add to the *number* of claims and counterclaims being raised. Because the overall picture of the parties' litigiousness is something that the district court considered when it denied the parties' requests for attorney fees, we pause here to note the other claims that were added. Branson added claims for defamation and invasion of privacy. Marvin added a claim based on allegations that Branson had wrongfully filed a lis pendens with regard to property owned by Marvin and that this lis pendens had harmed Marvin in his attempts to sell the property. It was at this time that Marvin also added the claims related to the family trust.

## III. THE DISPUTE REGARDING BRANSON'S MANAGEMENT OF THE FAMILY TRUST

¶ 22 At the same time that Marvin amended his complaint to include allegations related to the January 2005 assault, he also added claims for breach of fiduciary duty and conversion based on Branson's alleged mismanagement of a family trust. According to Marvin, the brothers' parents, through establishment of a trust and other estate-planning devices, had devised a piece of land to Branson and Marvin as co-owners.[7] Marvin alleged that Branson, acting as the representative of the estate, had administered this property, known as the Manila ranch, in contravention of the terms of the estate plan. Specifically, Marvin claimed that Branson sold jointly owned cattle and entered into an oil lease without dividing the proceeds from the transactions according to the terms of the family trust. He also alleged that when the brothers jointly sold the Manila ranch property, Branson received a number of the payments and kept more than his share of the proceeds.

## IV. PROCEEDINGS IN THE TRIAL COURT

¶ 23 Each of the issues being presented on appeal relates to a different dispositive action by the trial court. First, Marvin moved for summary judgment on Branson's claim for malicious prosecution, which the trial court granted. Second, the trial court conducted a jury trial on a number of the claims related to the dissolution of the brothers' business relationship. Third, the trial court bifurcated the issues related to the family trust and the Manila ranch property and conducted a bench trial on those issues. That bench trial concluded with stipulations from both parties regarding certain damages awards. Because the details surrounding the trial court's disposition of these claims are relevant to the brothers' arguments on appeal, we recite the procedural history in some detail.

### A. The Trial Court Grants Summary Judgment in Favor of Marvin on Branson's Malicious Prosecution Claim

¶ 24 Marvin moved for and successfully obtained summary judgment on Branson's claim for malicious prosecution. The district court concluded that Marvin was entitled to judgment as a matter of law because the undisputed facts failed to demonstrate a lack of probable cause. Specifically, a claim for malicious prosecution requires proof that the party who initiated criminal proceedings did so with malice and without having probable cause to believe that a crime was committed. Here, in the context of Branson's criminal prosecution, a magistrate judge evaluated whether sufficient probable cause existed to require Branson to stand trial and concluded that there was sufficient probable cause. The trial court considered this conclusion by the magistrate judge "dispositive of the matter."

¶ 25 Nevertheless, the trial court also recognized that a finding of probable cause in the criminal proceeding "may not collaterally estop a malicious prosecution claim." Therefore, the trial court undertook its own independent analysis of probable cause. The court noted that there was "no dispute" that Branson's driving with Marvin hanging on the outside of his truck qualified as an assault and that there were not "sufficient material facts to support [Branson's] innocence]." Accordingly, the court concluded that summary judgment was appropriate based on Branson's failure to establish a disputed issue of material fact with regard to this element of his claim. Alternatively, the trial court concluded that Branson's claim failed because he did not establish a disputed issue of material fact regarding Marvin's malice. The court noted that establishing malice does not require proof of "actual spite, ill will or grudge," and that proof of wrongful or improper motive will suffice. Nevertheless, the trial court found the record was "void of any evidence beyond [Branson's] speculation that [Marvin] initiated the prose-

---

**7.** It is unclear exactly which portions of this estate plan might meet the traditional legal definition of the word "trust." Given the lower court's disposition of this matter and the posture of this issue on appeal, we need not inquire into the structure of all of the facets of this estate plan.

cution ... for any wrongful or improper motive." The court noted the "troubling" affidavit of Marvin's neighbor who testified that Marvin had been faking his injuries, but found the affidavit to be insufficient proof of "actual innocence" or "actual malice." Accordingly, the court found the lack of proof of malice to be an independent ground for granting summary judgment.

### B. After a Jury Delivers Its Verdicts on Many of the Brothers' Claims, the Trial Court Grants JNOV With Regard to Two Verdicts Given in Branson's Favor

¶ 26 The majority of the brothers' claims against one another were tried and presented to a jury in January 2007.[8] Specifically, the jury was asked to decide Marvin's claims for breach of contract, assault and battery, slander of title, breach of duty of good faith and fair dealing, and breach of fiduciary duty. The jury was asked to decide Branson's claims for breach of contract, assault and battery, slander of title, breach of duty of good faith and fair dealing, breach of fiduciary duty, and breach of the salary-continuation agreement.

¶ 27 Both of the brothers obtained mixed results. First, the jury rejected Marvin's claim for slander of title. Second, although the jury found that Branson had breached his fiduciary duty to Marvin and had breached a duty of good faith and fair dealing he owed to Marvin, it awarded Marvin $0 in damages with regard to these claims. Finally, the jury entered judgment in Marvin's favor with regard to his claims for breach of contract and assault and battery. On the special verdict form, the jury indicated that Marvin was entitled to $1 in damages for each of these claims.

¶ 28 Branson fared slightly better. As it did with Marvin's claims for assault and battery, the jury entered a $1 damages award for Branson's claim of assault and battery. But with regard to Branson's claim for breach of contract, the jury awarded Branson $9,000. The jury also found that Marvin breached a duty of good faith and fair dealing that he owed to Branson but, as it did with Marvin's similarly styled counterclaim, the jury found $0 in damages resulting from this breach.

¶ 29 Finally, the jury resolved Branson's claims for slander of title and breach of fiduciary duty in a way that prompted Marvin to seek judgment notwithstanding the verdict. The special verdict form presented the slander of title question to the jury as follows:

> Question No. 6: Does the jury find by clear and convincing evidence that Marvin slandered title to Branson's property?
>
> Yes___ No___
>
> (A) If the jury answered Question No. 6 as "Yes," the jury must give judgment in favor of Branson and against Marvin on Branson's slander of title claim, and hereby awards damages to Branson in the amount of $_____. If the jury answered this question, then proceed to answer Question No. 6(C).
>
> (B) If the jury answered Question No. 6 as "No," the jury has given judgment in favor of Marvin and against Branson on Branson's slander of title claim. Proceed to [the next claim].
>
> (C) If the jury awarded Branson damages under paragraph (A), does the jury find that Marvin should be held to pay Branson's attorney fees?
>
> Yes___ No___

With regard to Branson's claim for breach of fiduciary duty, the special verdict form asked a series of similarly phrased questions. In response to the general question of whether Marvin slandered Branson's title and breached a fiduciary duty, the jury answered affirmatively. But the jury then entered a value of $0 in damages for each claim. Neverthe-

---

8. As mentioned, the claims related to the family trust were bifurcated and tried at a later date. Further, several of the claims had been resolved by motion prior to the trial and were not presented to the jury. Other claims were restyled and presented to the jury in forms that differ slightly from how they were presented in Branson's com- plaint and Marvin's counterclaim. Thus, while the claims listed here do not correspond precisely to all of the claims initially raised, they do represent all of the claims related to the dissolution of the brothers' business relationship that remained in dispute at the time of trial.

less, the jury awarded Branson attorney fees on both claims.

¶ 30 Two aspects of the jury instructions and special verdict forms are noteworthy and, as will be discussed below, relate to arguments raised by the parties on appeal. First, the jury instruction for Branson's breach of fiduciary duty claim was essentially identical to the instruction for Marvin's breach of fiduciary duty claim. With regard to Marvin's claim, the jury answered the questions almost identically to the manner in which it answered the questions relating to Branson's claim; it stated that it found Branson had breached a duty owed to Marvin, but that Marvin suffered $0 in damages. But unlike its response with regard to Branson's claim, in answering the questions related to Marvin's claim, the jury answered that Branson *should not* be required to pay Marvin's attorney fees. Second, the jury received instructions specifically related to attorney fees. One such instruction, under the heading "Breach of Fiduciary Duty Damages" stated that "If you choose to award attorney fees as damages herein, the amount of attorney's fees will be determined later by the court." Another instruction, under the heading of "Slander of Title Definition—Actual or Special Damages" stated that "Attorney fees may be recoverable as special damages if incurred to clear title, or to undo any harm created by whatever slander of title actually occurred."

¶ 31 Marvin challenged the jury's verdict with regard to Branson's claims of breach of fiduciary duty and slander of title. Specifically, he sought JNOV on the basis that the jury's $0 damages awards negated the element of damages and defeated the claims. Since damages are a required element of each of these claims, Marvin argued that it was impossible to reconcile the jury's award of $0 in damages with its conclusion that he had slandered Branson's title or breached a fiduciary duty owed to Branson.

¶ 32 The court granted Marvin's motion for JNOV. In its findings of fact and conclusions of law in support of its order, the court stated that the jury failed to follow the instructions on the special verdict form. Because the special verdict form prompted the jury to resolve the attorney fee questions only "[i]f the jury awarded Branson damages," the court concluded that the jury, having awarded $0 in damages, should not have responded to the questions regarding attorney fees. Concluding that the jury failed to follow the court's instructions, it granted Marvin's motion and entered JNOV with regard to Branson's claims for breach of fiduciary duty and slander of title.

### C. The Trial Court Denies Marvin's Request for Attorney Fees

¶ 33 At different points in this litigation, each of the brothers moved for attorney fees.[9] Branson filed his motion seeking attorney fees in February 2007, in the week after the conclusion of the jury trial on the issues related to the brothers' business venture. This motion, based largely on Branson's successful recovery of a $9,000 award for breach of contract, was denied by the court at the same time that the court awarded Marvin a JNOV on Branson's claims for slander of title and breach of fiduciary duty. The denial of this motion for attorney fees is not at issue in this appeal.

¶ 34 Several months later, in August 2007, the trial court conducted a bench trial to resolve the claims related to the family trust. The resolution of issues at that trial complicated Marvin's attempt to move for attorney fees. Branson essentially stipulated to a number of damages amounts but raised an issue regarding whether Marvin's actions entitled him to offset these damages. Determining whether these offsets would be granted required the trial court to decide whether its earlier decisions on some of Branson's claims had been based on the merits of those claims or if they had been based on a statute

---

9. Each of the brothers has also requested attorney fees on appeal. These requests are hereby denied. To the extent the requests are based on this court's power under Utah Rule of Appellate Procedure 33 to award fees to opposing counsel when a party raises frivolous claims, we find none of the claims raised to be so frivolous that fees are appropriate. To the extent the claims are based on contractual language that entitles a prevailing party to attorney fees, we find that, given our disposition of the brothers' substantive claims, neither party has prevailed in this appeal.

of limitations. So while the trial court had determined the amounts of Branson's liability to Marvin for the trust issues, the court reserved the issue of whether Branson was entitled to any offsets.

¶ 35 At the time of this bench trial, Marvin had yet to move for attorney fees based on the litigation related to the family trust. But he had made apparent his intention to do so. Indeed, the trial court judge noted that Marvin's intention to pursue attorney fees was "what [was] keeping everybody from settling" and suggested that the parties should focus on that central issue. Marvin represented to the trial court that he could not fully calculate his attorney fees until after all of Branson's claims regarding the potential offsets could be fully resolved. But the trial court responded that Marvin knew what attorney fees had accrued up to that point and suggested that this amount would not likely increase much before the case's resolution. The trial court concluded, "I need some guidance on attorney's fees. It's your claim.... Why don't you frame that by way of a motion for an award.... Get it to me.... You're not going to spend a lot of attorney's fees between now and when I find a resolution to this case." Ultimately, however, Marvin postponed moving for attorney fees on the issues surrounding the family trust.

¶ 36 But Marvin did move for attorney fees based on his having prevailed over Branson on a large number of the already-resolved issues related to the brothers' business venture. Marvin filed this motion nearly three months after the conclusion of the bench trial on the family trust issues. As will be discussed, this was the only such motion Marvin filed. It does not seek any fees related to the bench trial and resolution of family trust issues. In this motion, Marvin argued that he had prevailed with regard to the claims related to the brothers' business venture because he had successfully avoided the vast majority of damages that Branson sought—damages that Marvin claimed could have amounted to over $3 million. In support of this argument, Marvin enumerated all of the various claims that he had defeated. According to Marvin's method of enumerating these claims, he prevailed on seventeen claims prior to trial and another fourteen claims at trial.

¶ 37 In July 2008, eight months after Marvin's motion for attorney fees was filed and eleven months after the bench trial on the family trust issues, the trial court issued a memorandum decision with the stated intention of fully resolving all outstanding issues. In that decision, the trial court rejected Branson's argument that his liability on the trust issues should be offset by other claims not yet resolved. Thus, with regard to the family trust claims, the trial court concluded that Marvin was entitled to the amounts stipulated to at the bench trial, plus interest.

¶ 38 The trial court also considered Marvin's request for attorney fees and rejected the request. The court provided a number of reasons for rejecting the request. First, it incorporated the reasoning that it employed in rejecting Branson's earlier request for attorney fees in November 2007. Importantly, this November 2007 decision was entered in the three-month period between the end of the bench trial and the day Marvin filed his motion for attorney fees. Thus, it was issued at a time when the court was aware that Marvin intended to seek attorney fees on issues related to the family trust once those issues were resolved. Although the November 2007 decision was responsive to Branson's request for attorney fees, it noted that "[e]ven though [Marvin] reserved attorney fees to be determined at the end of trial, the Court finds that neither party is justified in receiving attorney fees in regards to the breach of contract issue." In so concluding, the court noted that since both parties had prevailed on some of their claims, any awards of attorney fees would offset one another.

¶ 39 Second, the trial court's decision on Marvin's motion for attorney fees noted that Marvin voluntarily withdrew a large number of his claims before submitting them to the jury and that he recovered only $1 with regard to his breach of contract claim. Noting that "[t]he attorneys fees expended and incurred on both sides are enormous" and that "the time and energy spent, the precious family ties and relationships lost, the public's forum and taxes [and] money wasted can all only be adequately described as a disaster."

The court concluded that "[t]he only feasible and reasoned decision relative to attorney's fees is that neither party prevailed [and] both suffered irreparable loss." The trial court "refuse[d] to compound the loss by awarding fees to either party." Again noting the minimal recovery achieved by either party, the trial court concluded that it was "not bound by [those awards] to find therefrom a 'prevailing party' in this catastrophic litigation." It therefore awarded "no fees to either side."

¶ 40 The trial court indicated that this ruling would be its final order "and any other relief [was] to be sought on appeal." Because the issue of Branson's offsets remained outstanding until the district court issued this order, the order constitutes the trial court's only order on the issues surrounding the family trust claims. Because no prior order had been issued related to these claims, and because the trial court indicated that this was its "final order," Marvin argues on appeal that he did not have an opportunity to move the court for attorney fees related to his success at the bench trial.

## V. BRANSON'S APPEAL AND MARVIN'S CROSS-APPEAL

¶ 41 Both parties appealed from the trial court's judgment. Branson claims on appeal that the trial court erred when it granted summary judgment against him on his claim for malicious prosecution. He argues that the trial court gave undue weight to the finding of probable cause by the magistrate judge in his criminal proceedings because the existence of probable cause must be measured by reference to what Marvin knew at the time he initiated Branson's prosecution. He also argues that, given the evidence of Marvin's motives for initiating the prosecution, the trial court incorrectly concluded that Branson had failed to raise an issue of disputed fact regarding Marvin's malice. We need not resolve the issues raised by Branson because another ground for affirming the trial court's decision is apparent from the record. We hold that when Branson entered into a plea in abeyance with regard to this criminal episode, the criminal proceedings

were not terminated in his favor. Because termination of the prosecution in favor of the accused is an element of a claim for malicious prosecution, the trial court did not err in granting Marvin's motion for summary judgment on this claim.

¶ 42 On cross-appeal, Marvin claims that the trial court erred in denying his request for attorney fees and in preventing him from filing a request for attorney fees related to the trust issue. He presents a number of arguments that, he claims, require remand of the attorney fee issue for further consideration. First, he argues that he had a statutory and procedural entitlement to modify his request after entry of judgment on the trust issues and that the trial court erred in not permitting him to request additional fees related to the bench trial of these family trust issues. Second, he contends that the trial court's decision is formally deficient because it contains insufficient findings to support its conclusion. Finally, he argues that the trial court erred in concluding that he was not the prevailing party for purposes of attorney fees because the trial court neglected to consider his success at the bench trial and did not adequately account for the success he enjoyed by preventing Branson from recovering on a majority of his claims.

¶ 43 We affirm the trial court's decision related to Marvin's attorney fees. Specifically, we hold that the trial court's decision is not formally deficient because we find it sufficiently detailed to support meaningful appellate review. We also conclude that the trial court did not abuse its discretion in preventing Marvin from filing a post-judgment motion for attorney fees related to the bench trial of the family trust issues. Finally, we hold that the trial court did not abuse its discretion in determining that neither party prevailed in this litigation.

¶ 44 Branson also appealed the trial court's grant of JNOV with regard to the jury's verdicts on his claims for slander of title and breach of fiduciary duty. He claims that the trial court incorrectly concluded that attorney fees cannot form the damages component of these claims and that this incorrect conclusion led the trial court to conclude that the verdict was internally inconsistent. He

argues that the jury's answers should, instead, be interpreted to mean that the jury intended to award attorney fees as damages, with the amount of the damages to be determined by the court.[10]

¶ 45 We agree with Branson's argument as it relates to his slander of title claim because our cases acknowledge the possibility that attorney fees can form the basis of damages in a slander of title claim, so long as those fees are reasonably necessary to remove disparaging clouds from the slandered title. This is an exception to our general rule for awarding attorney fees in tort cases. And since this exception does not apply to claims for breach of fiduciary duty, we disagree with Branson's arguments with regard to that claim. Accordingly, we reverse the trial court's grant of JNOV with regard to the jury's verdict on the slander of title claim, but affirm the trial court's grant of JNOV as it relates to Branson's claim for breach of fiduciary duty.

### STANDARDS OF REVIEW

¶ 46 This case comes to us on direct appeal from the district court. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp.2010). Given the variety of issues raised by the parties, we employ different standards of review in this case.

¶ 47 The trial court's grant of summary judgment on the claim for malicious prosecution is an issue of law that we review for correctness.[11] We afford no deference to the trial court's conclusions.[12] We affirm a grant of summary judgment only if there are no disputed issues of material fact and if, viewing the undisputed facts and all reasonable inferences in the light most favorable to the nonmoving party, we determine that the moving party was entitled to judgment as a matter of law.[13]

¶ 48 The trial court's decision regarding whether to award attorney fees will be overturned only if the trial court exceeded the bounds of its discretion.[14] But the related question of "whether the trial court's findings of fact in support of an award of fees are sufficient is a question of law" that we review for correctness.[15]

¶ 49 The trial court's entry of JNOV is also reviewed for correctness.[16] The process of reviewing a grant of JNOV includes a number of special considerations. We view the facts of the case in the light most favorable to the jury verdict.[17] Accordingly, JNOV is "justified only if, after looking at the evidence and all reasonable inferences in a light most favorable to the nonmoving party, 'the trial court concludes that there is no competent evidence which would support a verdict in [that party's] favor.' "[18] To this end, "we must review the record and determine whether there is any basis in the evidence, including reasonable inferences which

---

10. Branson obtained a juror's affidavit that he argues on appeal supports his interpretation of the jury verdict. Marvin has moved to strike this affidavit on the grounds that it violates the Utah Rules of Evidence. Marvin has also moved for sanctions and summary disposition of Branson's claim based on both the filing of this juror's affidavit and what he claims are deficiencies in Branson's briefing on appeal.

Our conclusions regarding the jury's verdict do not require consideration of the juror's affidavit. Since we did not consider this allegedly wrongfully filed evidence, we need not determine whether the Utah Rules of Evidence require that it be stricken. Further, we find nothing in the briefing egregious enough to prompt us to summarily dismiss Branson's claims or to impose sanctions in this case.

11. *See Cabaness v. Thomas*, 2010 UT 23, ¶ 18, 232 P.3d 486.

12. *Id.*

13. Utah R. Civ. P. 56(c).

14. *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

15. *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998).

16. *Braithwaite v. W. Valley City Corp.*, 921 P.2d 997, 999 (Utah 1996) ("In passing on a motion for a j.n.o.v., a trial court has no latitude and must be correct." (internal quotation marks omitted)).

17. *See Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557.

18. *DeBry v. Cascade Enters.*, 879 P.2d 1353, 1359 (Utah 1994) (quoting *Gustaveson v. Gregg*, 655 P.2d 693, 695 (Utah 1982)).

could be drawn therefrom, to support the jury's determination.... If we find support, we must reverse the trial court's grant of a j.n.o.v." [19] Finally, with regard to a claim that a jury verdict is internally inconsistent, we resolve any inconsistency in favor of giving effect to a jury verdict.[20]

## ANALYSIS

¶ 50 In addressing the brothers' claims, we turn first to Branson's claim that the trial court erred in granting summary judgment against him on his claim for malicious prosecution. Second, we address Marvin's claim that the trial court erred in denying him attorney fees. Third, we address Branson's claim that the trial court erred in granting JNOV against him on his claims for slander of title and breach of fiduciary duty. We hold as follows: (I) because the criminal proceedings forming the basis of Branson's malicious prosecution claim were not terminated in his favor, the trial court did not err in granting summary judgment against Branson on that claim; (II) because the trial court had a reasonable basis for declining to award Marvin his attorney fees, the trial court did not abuse its discretion in so doing; and (III) because attorney fees can form the basis of damages for a slander of title claim, but not for a breach of fiduciary duty claim, the trial court erred in granting JNOV against Branson with regard to his claim for slander of title, but not with regard to his claim for breach of fiduciary duty.

## I. THE TRIAL COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT AGAINST BRANSON ON HIS CLAIM FOR MALICIOUS PROSECUTION

 ¶ 51 The trial court correctly concluded that Marvin was entitled to summary

judgment on Branson's claim for malicious prosecution. Although the trial court granted summary judgment on two alternative bases—that Branson failed to establish that Marvin lacked probable cause and that Branson failed to establish that Marvin acted with malice—we affirm on an alternative ground. It is apparent from the record that the criminal proceedings underlying Branson's claim were not terminated in his favor.

 ¶ 52 A claim for malicious prosecution requires proof of four elements:

(1) [the] defendant[ ] initiated or procured the initiation of criminal proceedings against an innocent plaintiff; (2)[the] defendant[ ] did not have probable cause to initiate the prosecution; (3)[the] defendant[ ] initiated the proceedings primarily for a purpose other than that of bringing an offender to justice; and (4) the proceedings terminated in favor of the accused.[21]

Under the Restatement (Second) of Torts, proceedings have "terminated in favor of the accused" only when the "final disposition [of the criminal charges] is such as to indicate the innocence of the accused." [22] To this end, under the Restatement approach, this element of a claim for malicious prosecution cannot be established if the charge is withdrawn out of mercy or "the charge is withdrawn ... pursuant to an agreement of compromise with the accused." [23] While we have not addressed this issue in our prior cases, we are persuaded that the Restatement approach to this element of a malicious prosecution claim is the correct one.

¶ 53 This conclusion does not end our inquiry. As mentioned, the brothers dispute the nature of the dismissal of the aggravated assault charge brought against Branson. In a letter to Marvin, the prosecutor overseeing

---

19. *Braithwaite*, 921 P.2d at 999.

20. See *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985); *Moore v. Burton Lumber & Hardware Co.*, 631 P.2d 865, 869 (Utah 1981); *see also Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir.2000) ("When reviewing claims that a jury verdict is inconsistent, we must accept any reasonable view of the case that makes the jury's answers consistent." (internal quotation marks omitted)).

21. *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 156 (Utah 1991) (footnote omitted).

22. Restatement (Second) of Torts § 660 cmt. a (1977).

23. *Id.* § 660(a).

Branson's case signaled her intent to refile these charges after the completion of the brothers' civil action. Branson claims that the charges were simply voluntarily dismissed and that constitutional protections against double jeopardy preclude him from being charged again. Thus, there is a disputed issue of fact regarding precisely whether this claim was terminated in Branson's favor.

¶ 54 But while this fact may be disputed, it is only material if the dismissal of this one charge can be severed from Branson's guilty plea and viewed in isolation from the other charges. In other words, Branson contends that the charge of aggravated assault, standing alone, was terminated in his favor and that this is sufficient to support his claim.

¶ 55 We disagree. We are persuaded by the approach to this issue taken by the Third Circuit Court of Appeals in *Kossler v. Crisanti*.[24] In that case, a defendant in a criminal action was acquitted of charges of aggravated assault and public intoxication but was convicted of disorderly conduct.[25] The defendant subsequently brought a claim for malicious prosecution and, with regard to the termination of the proceedings, argued that the acquittal on the greater charges constituted termination of *those* charges in his favor.[26] The court was presented with the issue of "[w]hether acquittal on at least one criminal charge constitutes 'favorable termination' for the purpose of a subsequent malicious prosecution claim, when the charge arose out of the same act for which the plaintiff was convicted on a different charge during the same criminal prosecution." [27]

¶ 56 The court answered this question in the negative for reasons we find persuasive. Primarily, the court noted that analyzing charges from a criminal episode in isolation from one another does not adequately account for the requirement that the termination of proceedings indicate the accused's actual innocence.[28] In other words, an accused may be guilty of misconduct that would support multiple charges; acquittal on one such charge does not indicate that the accused is innocent of the misconduct that gave rise to the prosecution.[29] The court also noted that legal authorities that have examined this element of a claim for malicious prosecution refer to the termination of "proceedings" instead of termination of a "charge" or "offense." [30] We note that this comports with the Restatement approach that precludes founding a malicious prosecution claim on charges that were dismissed as part of a plea bargain.[31]

¶ 57 The Third Circuit concluded that "upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged." [32] We are persuaded that this is the appropriate way to account for the mixed disposition of multiple criminal charges when the charges arise from the same alleged criminal episode.

¶ 58 Applying this rule to the facts of this case, it is clear that the proceedings against Branson were not terminated in his favor for purposes of stating a claim for malicious prosecution. It is immaterial whether the prosecutor intended to refile the claim for aggravated assault. Whether she could have done so, given constitutional protections against double jeopardy, is also immaterial. The undisputed facts establish that, as a result of the altercation between the brothers, Branson pleaded guilty to a charge of violating a protective order. This violation arose from the same operative facts that also would have supported trying Branson for the

24. 564 F.3d 181 (3d Cir.2009).

25. *Id.* at 185.

26. *See id.* at 183.

27. *Id.* at 188.

28. *Id.* at 187.

29. *Id.*

30. *Id.* at 188 (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003); *Haefner v. Burkey*, 534 Pa. 62, 626 A.2d 519, 521 (1993); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119 (5th ed.1984); 52 Am.Jur.2d *Malicious Prosecution* § 32 (Supp.2007)).

31. *See* Restatement (Second) of Torts § 660(a).

32. *Kossler*, 564 F.3d at 188.

charge of aggravated assault. Although Branson was not convicted of the greater charge, given the guilty pleas based on the related criminal episode, nothing about the dismissal of the aggravated assault charge establishes that Branson was innocent of "the alleged misconduct underlying the offense[]." [33] Accordingly, the trial court did not err when it granted summary judgment in favor of Marvin on Branson's claim for malicious prosecution.[34]

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DECLINED TO AWARD MARVIN ANY ATTORNEY FEES

¶ 59 The trial court acted within the bounds of its discretion when it denied Marvin's motion for attorney fees because the court employed the necessary flexible and reasoned approach to awarding fees in a case where opposing parties each obtain mixed results. But before addressing the trial court's decision on its merits, we must address two arguments raised by Marvin that challenge the form of the trial court's judgment and the procedures the trial court followed in coming to its conclusion. After rejecting Marvin's procedural arguments, we turn to the substance of Marvin's claim for attorney fees and hold that the trial court did not abuse its discretion when it denied Marvin's request.

*A. We Reject Marvin's Arguments Challenging the Form of the Trial Court's Judgment and the Procedures the Trial Court Followed When It Resolved the Attorney Fees Issue*

¶ 60 Marvin argues that errors of form and procedure require remand for additional reconsideration of the attorney fees issue. We disagree with Marvin's arguments.

¶ 61 First, Marvin argues that the trial court entered insufficient findings to support its conclusions regarding Marvin's motion for attorney fees. When determining whether a trial court has entered sufficient findings of fact to justify its award of attorney fees, the touchstone is whether the findings of fact are thorough enough that they enable "meaningful appellate review." [35] Two inquiries are central to this review. First, the reviewing court must be able to determine whether the fee awarded is supported by the evidence.[36] Second, the re-

33. *Id.*

34. Given our disposition of this issue, we need not address whether Marvin had probable cause or acted with malice when he initiated the proceedings. We express no opinion on either of these issues, but we do pause to note that trial courts must be cautious to evaluate the existence of probable cause from the perspective of the alleged accuser at the time the accuser initiates criminal proceedings.

 In this case, the trial court relied heavily on the finding of probable cause made from the perspective of a magistrate judge deciding whether sufficient probable cause had been established to support binding Branson over for trial. Analyzing probable cause from this perspective may be insufficient because the accuser in a case of malicious prosecution may know facts that would wholly defeat probable cause but that remain unknown to the prosecution at the time of trial. *See Hodges*, 811 P.2d at 158 ("The accuser must have a reasonable basis for believing the accusation and must also subjectively believe the accusation to be true."); Restatement (Second) of Torts § 662 cmt. c ("A private prosecutor can not have probable cause ... if *he* does not believe that the accused was guilty of the crime charged." (emphasis added));

see also id. § 663 (stating that a magistrate's discharge of a defendant is conclusive of the *absence* of probable cause but that the magistrate's finding that probable cause exists is merely "evidence that the person initiating the proceedings had probable cause").

For instance, if the accused in a case of assault was acting in self-defense, it might be clear to a witness that no crime was committed. If this witness then initiated a prosecution and lied to the police about the accused's defense, the witness may have done so without probable cause. But police, prosecutors, and judges who review the facts surrounding the assault only through the lens of this imperfect information may legitimately find probable cause at the time of trial.

Of course, we express no opinion on this issue as it relates to the facts of this case. We pause here only to highlight for future jurists and litigants the importance of analyzing probable cause from the perspective of the accuser at the time the accuser initiates the prosecution.

35. *See Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("Without adequate findings of fact, there can be no meaningful appellate review.").

36. *See Cabrera v. Cottrell*, 694 P.2d 622, 624 (Utah 1985).

viewing court must be satisfied that the trial court has made a "meaningful appraisal" of the reasonableness of the request for attorney fees.[37] The sufficiency of findings of fact is a function of these two questions; so long as a court reviewing the findings of fact can determine whether the trial court made a meaningful appraisal of the value of attorney fees and so long as that value is based on evidence presented to the trial court, the trial court's findings will be sufficient to support appellate review.[38]

¶ 62 Subsumed within these broad inquiries are the myriad factors set forth in our case law regarding when attorney fees should be awarded and how fees should be calculated. Thus, as long as a court's findings of fact permit an appellate court to evaluate the reasonableness of the trial court's decision in the light of the rules we have set forth for determining attorney fees awards, the trial court's conclusion will not be vacated as a result of an alleged formal shortcoming. For instance, in a case where the trial court neglected to enter findings of fact and opted instead to set forth its reasoning in its order and judgment,[39] we noted that "[a]s a matter of form, it would have been preferable for the trial court to have entered separate findings of fact and conclusions of law in addition to the order and judgment … but the order and judgment are not defective because they are combined with findings and conclusions."[40]

¶ 63 As will be made clear by our discussion, the trial court's memorandum decision and order denying Marvin's request for attorney fees contains sufficient reasoning for us to determine the basis for, and reasonableness of, its decision. It adequately sets forth reasoning that accounts for the various factors we require courts to examine when awarding attorney fees in cases, like this one, where opposing parties obtain mixed results. There may have been a more preferable method that the trial court could have used

to set forth its findings. But that is a matter of form that does not preclude us from engaging in meaningful review of the trial court's decision. Accordingly, we reject Marvin's contention that the attorney fees issue must be remanded for additional findings of fact.

¶ 64 Second, Marvin argues that the trial court committed reversible error when it precluded him from filing his motion for attorney fees related to the trust issues. As mentioned, Marvin indicated to the court that he would submit an updated request for attorney fees once all issues regarding the family trust were resolved. But because the trial court order resolving these issues also directed the parties to seek any further relief on appeal, Marvin claims he was denied the opportunity to seek these additional fees. We reject this claim because we find it was inadequately briefed.

¶ 65 Utah Rule of Appellate Procedure 24 sets forth the content requirements for the brief of a party seeking relief on appeal, and permits this court to disregard or strike briefs that fail to comply with those requirements.[41] Under this rule, a party's argument may be disregarded if it offers little more than "a disjointed array of facts selected because they aid his cause" coupled with "conclusory statement[s] unsupported by analysis or authority."[42] We do not strike Marvin's brief altogether because it is in most respects adequate. But his argument regarding whether he was entitled to an opportunity to update his request for attorney fees is not.

¶ 66 Marvin's argument appears to proceed in three steps. First, he notes, Utah Rule of Civil Procedure 54(d)(2) provides a prevailing party in litigation with an opportunity to move for costs within five days after entry of judgment.[43] Second, his claim for attorney fees with regard to the family trust issues is

---

**37.** See *Foote v. Clark,* 962 P.2d 52, 55 (Utah 1998).

**38.** See *Cabrera,* 694 P.2d at 624–25.

**39.** See *id.*

**40.** *Id.* at 625.

**41.** See Utah R.App. P. 24(a)(9), (k).

**42.** *State v. Green,* 2005 UT 9, ¶ 12, 108 P.3d 710.

**43.** See Utah R. Civ. P. 54(d)(2).

based on Utah Code section 75–7–1004, which permits a prevailing party in cases involving the administration of a family trust to recover "costs and expenses, including reasonable attorney's fees."[44] Third, because the statutory provision on which his request is based "lumps attorney's fees into costs," the provisions of rule 54 related to the appropriate time to file postjudgment motions for cost necessarily apply to attorney fees in this case.

¶ 67 Marvin provides no case law or legal analysis in support of this conclusion. He essentially argues that the statutory language makes it self-evident that the statutory provision and the rules of civil procedure are intertwined, such that rule 54's timing provision for seeking costs applies to a motion for attorney fees under section 75–7–1004. But it clearly is not self-evident. For instance, Marvin ignores the fact that the statutory provision on which he relies states that a "court *may*, as justice and equity may require, award costs and expenses."[45] Given this apparently discretionary language, there may be cases where the statute does not require a court to entertain a motion for attorney fees at all—within five days of entry of judgment or otherwise.

¶ 68 Further, when Marvin argued to the trial court that he would not know the amount of attorney fees to request until the case was finally resolved, the trial court asked Marvin to prepare a motion for attorney fees incorporating the attorney fees accrued to that point and an estimation of the attorney fees that would be needed to bring the case to resolution. The trial court's request clearly anticipated that Marvin file his motion *before* the trial court's resolution of the case, not within five days of entry of judgment. Marvin did not argue to the trial court then, nor does he adequately argue to us now, why the trial court's view of the

appropriate time to file for attorney fees was incorrect.

¶ 69 To be clear, Marvin has included a scattershot collection of facts in support of the alleged unfairness of the trial court's decision. But merely raising concerns is not sufficient. An adequate appellate brief must provide the reasoning and legal authority that will assist this court in resolving those concerns. With regard to his argument that the trial court committed reversible error by denying the opportunity to update his request for attorney fees, Marvin has not complied with the requirements of Utah Rule of Appellate Procedure 24. We therefore disregard this argument.

*B. We Reject Marvin's Substantive Challenge to the Trial Court's Denial of His Motion for Attorney Fees and Hold That the Trial Court Did Not Abuse Its Discretion*

¶ 70 Turning to the substance of Marvin's claim for attorney fees, we hold that the trial court did not abuse its discretion when it denied Marvin's request. When a trial court considers whether to award attorney fees, it must base its decision on a number of factors.[46] These factors include the language of the contract or statute that forms the basis for the attorney fees award, the number of claims brought by the parties, the importance of each of the claims relative to the entire litigation, and the amounts awarded on each claim.[47] Employing these factors as a tool for analyzing which party has prevailed "permit[s] a case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, *or neither*, parties may be considered to have prevailed."[48] Accordingly, it is possible that, in litigation where both parties obtain mixed results, neither party should be deemed to have prevailed for purposes of awarding attorney fees.[49] This is true even where statu-

44. *See* Utah Code Ann. § 75–7–1004(1) (2008).

45. *Id.* (emphasis added).

46. *See Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992).

47. *See id.* at 269–70; *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

48. *R.T. Nielson Co.*, 2002 UT 11, ¶ 25, 40 P.3d 1119 (emphasis added).

49. *See A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶¶ 22, 27–28, 94 P.3d 270 (stating that "we have never ... applied any standard that precludes a finding of a draw" and affirming an award of attorney fees to neither party).

tory language states that a prevailing party "shall be entitled to" fees.[50] The hallmark for determining which party has prevailed is not whether one party has recovered money in an absolute sense, but whether the trial court's decision about who prevailed was based on an approach that was flexible and reasoned.[51]

¶ 71 In setting forth these standards, we have been guided by principles that bear repeating in this case. The reason that we defer to the trial court's judgment, and reverse a trial court's attorney fees determination only if the trial court exceeds the bounds of its discretion, is that "the trial court is in a better position than ... appellate court[s] to decide which party is the prevailing party."[52] And although we have enumerated a number of factors to be employed to guide a trial court's inquiry, we have also stressed the importance of "not ignor[ing] common sense when deciding which party prevailed."[53]

¶ 72 We have no doubt that the trial court based its conclusions on adequate consideration of the factors we have deemed relevant to the attorney fees determination. The trial court correctly noted that, relative to the relief sought, each of the brothers recovered "de minimis" amounts. Where Branson sought millions of dollars, he recovered approximately $9,000. And Marvin recovered only $1 in nominal damages. The court also noted that Marvin voluntarily withdrew most of his claims before they were submitted to the jury. With regard to the relative importance of the claims on which the brothers each recovered, the court stated that "both suffered irreparable loss" and it "refuse[d] to compound the loss by awarding fees to either party." The trial court described the litigation as "a disaster." And it noted that describing the case as one concerning a breach of contract would "not consider the other claims [raised] and does not adequately describe the terrible mess these two brothers created for themselves." The court also incor-

porated its earlier decision denying fees to both sides wherein the court noted that even if it were to award fees, the awards would offset one another.

¶ 73 Marvin attacks the trial court's conclusions chiefly on the grounds that he defeated a large number of Branson's claims by motion prior to trial and prevented Branson from recovering the millions of dollars that he initially sought. Marvin argues that, at trial, he obtained all of the relief that he ultimately sought. This argument is entirely unpersuasive and somewhat disingenuous. In representing to this court how much money Branson sought at trial, Marvin cites to Branson's initial discovery disclosures and damages calculation. But Marvin ignores his own discovery disclosures, where he claimed to be seeking more than $1 million in damages himself. Instead, Marvin cites as the basis of his victory the fact that he obtained all of the relief he ultimately requested at trial—after he had reduced his million dollar-plus damage request to a mere request for nominal damages. Marvin neglects to explain the impetus behind his decision to forego his full measure of damages and merely seek nominal damages at the jury trial, but regardless of his reason, it cannot justify the sleight of hand of asking a court to view the relative recoveries of the parties from two different starting points. When viewed from the common starting point of the parties' discovery disclosures, Marvin's claim that he successfully dodged millions of dollars of liability to Branson is thwarted by the common-sense conclusion that Branson also successfully avoided more than $1 million in damages sought by Marvin.

¶ 74 We come inescapably to the same conclusion the trial court reached. Each of these brothers filed a lawsuit against the other. The various causes of action largely mirrored one another, as did the ultimately de minimis recovery achieved by each brother. The claims on which Marvin "prevailed" were so costly to litigate and were of so little

---

50. *See id.* ¶¶ 7, 27–28.

51. *Id.* ¶ 14; *R.T. Nielson Co.*, 2002 UT 11, ¶¶ 24–25, 40 P.3d 1119.

52. *R.T. Nielson Co.*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

53. *A.K. & R. Whipple Plumbing & Heating*, 2004 UT 47, ¶ 11, 94 P.3d 270.

consequence in the context of the litigation that the trial court acted entirely within the bounds of its discretion when it concluded that Marvin had not prevailed for purposes of recovering attorney fees. The trial court's analysis was flexible and reasoned and proceeded from the common-sense perspective we have asked trial courts to employ in resolving issues like this one. Accordingly, we affirm the trial court's conclusion that Marvin was not a prevailing party for purposes of recovering attorney fees.

### III. THE TRIAL COURT ERRED WHEN IT OVERTURNED THE JURY VERDICT WITH REGARD TO BRANSON'S CLAIM FOR SLANDER OF TITLE, BUT IT CORRECTLY OVERTURNED THE JURY VERDICT WITH REGARD TO BRANSON'S CLAIM FOR BREACH OF FIDUCIARY DUTY

¶ 75 The availability of attorney fees as special damages in a claim for slander of title required the trial court to sustain the jury's verdict with regard to Branson's slander of title claim. But because attorney fees are not available as special damages in a claim for breach of fiduciary duty, the trial court correctly granted JNOV with regard to that claim. As discussed, the jury's verdicts on each of these claims follow the same pattern: first, the jury declares that Branson has prevailed on his claims; then the jury enumerates Branson's damages amount at $0; then the jury indicates that Marvin should be required to pay Branson's attorney fees.

¶ 76 Our resolution of this issue is inextricably linked with the standard of review we employ in reviewing a court's decision to overturn a jury verdict. "Where the possibility of inconsistency in jury interrogatories or special verdicts exists, [we] will not presume inconsistency; rather, [we] will seek to reconcile the answers if possible." [54] Ac-

cordingly, a jury's verdict will be sustained, even in the face of possible inconsistency, if the judgment can "be read harmoniously." [55] Given this standard of review, the question for this court is whether it is reasonable to construe the jury's verdict with regard to these claims in a manner that gives effect to all of the jury's responses on the special verdict form.

¶ 77 To answer this question, we must examine the role of attorney fees in cases of slander of title and breach of fiduciary duty. The general rule for attorney fees in tort cases is that the parties are each responsible for their own fees. [56] Under this rule, commonly referred to as the "American Rule," the prevailing party may generally only recover fees if a statutory or contractual provision entitles that party to such an award. [57] An important corollary to this rule is that the fees employed to prove that one has suffered as the result of a tort may not be counted as a component of the damages. Were it otherwise, all attorney fees would be characterized as damages, and the general rule would cease to have any effect.

¶ 78 The parties dispute the role of attorney fees as special damages. Branson argues that attorney fees may form the basis of a damages award in cases of slander of title and breach of fiduciary duty. Marvin disagrees as to both types of claim. We conclude that Branson is correct with regard to his claim of slander of title, but that he has incorrectly interpreted our cases with regard to attorney fees in claims for breach of fiduciary duty. Accordingly, we reverse the trial court's grant of JNOV with regard only to the claim for slander of title.

### A. In a Case for Slander of Title, Attorney Fees May Form the Basis of a Damages Award if the Fees Are Reasonably Necessary to Remedy the Slander of Title

¶ 79 In slander of title cases, attorney fees may be recovered as special dam-

---

54. *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985).

55. *See id.*

56. *See* Restatement (Second) of Torts § 914 cmt. a (1979).

57. *See Utahns for Better Dental Health–Davis, Inc. v. Rawlings*, 2007 UT 97, ¶ 5, 175 P.3d 1036 (" 'In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award.' " (quoting *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148)).

ages if the fees are reasonably necessary to remedy the disparagement of the plaintiff's title.[58] A claim for slander of title requires proof of four elements: (1) publication of a slanderous statement, (2) the statement must be false, (3) the statement must be made with malice, and (4) the statement must cause special damages to the plaintiff.[59] Given the jury's conclusion that Marvin slandered Branson's title, our attempt to reconcile the jury verdict begins by accepting that the first three of these elements were satisfied.[60] But we cannot simply accept that the jury found the fourth element, because its award of $0 in damages renders its answer to this question potentially inconsistent. Thus, in our attempt to reconcile this potential inconsistency we must determine whether the jury's award of $0 damages can reasonably be harmonized with its implicit finding that Marvin's published statements about Branson's title caused special damages to Branson.

¶ 80 Our cases establish that special damages in the context of a slander of title claim can take at least two forms. For instance, if a slanderous statement forces a party to sell land at a reduced price, the reduction in value is a realized loss that can form the basis of a damages award.[61] Alternatively, a landowner may take legal action to remedy the effects of the slanderous statement.[62] To the extent that this legal action is reasonably necessary to remove clouds from the party's title, the party may recover those attorney fees.[63]

¶ 81 We acknowledge that in some cases we have suggested that certain restrictions might limit the ability of plaintiffs to recover in various circumstances surrounding the alleged slander of title. For instance, where a party's claim for harm to the value of his property has been based on appraisal value instead of sale of the land at a reduced price, we have denied recovery because the damages had not yet been realized.[64] Similarly, in a case where plaintiffs took no action to clear the clouds from their title, we reversed an award of attorney fees on the basis that the fees were gratuitous in the absence of proof of any other damages.[65]

¶ 82 But these restrictions are not relevant to the case at hand. Here, Branson does not seek to recover merely for the decrease in the market value of his land. Nor does he seek an attorney fees award based on actions wholly disconnected from remedying the disparagement of his title. Rather, Branson seeks attorney fees in an amount that corresponds to the cost of bringing a legal action that led to the defects in his title being cured. We have upheld an award of attorney fees as special damages under these circumstances in the past,[66] and neither party has

---

58. *See Bass v. Planned Mgmt. Servs.*, 761 P.2d 566, 569 (Utah 1988) ("Attorney fees have been held to be recoverable as special damages if incurred to remove a cloud placed by the defendant on the title."); *see also Dowse v. Doris Trust Co.*, 116 Utah 106, 208 P.2d 956, 958–59 (1949) (rejecting the notion that a slander of title claim can be based only on sale of property at a reduced price, and permitting an award of attorney fees incurred in removing clouds from title).

59. *See Bass*, 761 P.2d at 568.

60. Both parties make claims regarding the sufficiency of the evidence. The trial court's decision to grant JNOV was not based on any finding that the jury lacked the evidence necessary to find in Branson's favor on these three elements. We have reviewed the evidence on which the jury could have relied in support of its finding and the brothers' arguments regarding the sufficiency of that evidence. We are not persuaded that the verdict was based on insufficient evidence. Accordingly, we examine only the potential inconsistencies in the jury verdict that may have led to the trial court's grant of JNOV.

61. *See First Sec. Bank of Utah N.A. v. Banberry Crossing*, 780 P.2d 1253, 1257–58 (Utah 1989).

62. *See Bass*, 761 P.2d at 568 (stating attorney fees may be awarded "as special damages if incurred to remove a cloud [from plaintiff's title]").

63. *Id.*

64. *Valley Colour, Inc. v. Beuchert Builders, Inc.*, 944 P.2d 361, 364 (Utah 1997) ("Proof of special damages usually involves demonstrating a sale at a reduced price or at greater expense to the seller. It is not sufficient to show that the land's value has dropped on the market, as this is general damage, not a realized or liquidated loss.").

65. *See Bass*, 761 P.2d at 569.

66. *See Dowse*, 208 P.2d at 958–59.

attempted to persuade us that our prior consideration of this issue was in error. As we have done in the past, we pause here to note that this approach aligns with the Restatement approach to this issue, which permits compensation in a slander of title action for "the expense of measures reasonably necessary to counteract the [clouds on the title], including litigation to remove the doubt cast upon vendibility or value by disparagement." [67]

¶ 83 Returning to our standard of review, we note that we are presented with essentially two viable interpretations. On one hand, the jury may have found that Branson successfully proved that his title was harmlessly slandered. Then, having concluded that Branson had successfully vindicated his rights, the jury may have intended to award Branson attorney fees as a reward. Such a verdict would be impermissible, and were this the only reasonable construction of the verdict, we would be bound to uphold the trial court's grant of JNOV.

¶ 84 The other viable interpretation is that the jury found that Branson successfully proved all elements of his slander of title claim, and that the slander was harmless *except for* the attorney fees Branson incurred in removing the clouds from his title. Therefore, although the jury found $0 in damages other than attorney fees, it awarded Branson his fees using the space on the special verdict form apparently reserved for that issue.

¶ 85 Given the choice of two competing reasonable alternatives, we are bound to adopt the construction of the verdict that does not nullify the jury's answers. Therefore, we conclude that the verdict should be construed as awarding Branson his attorney fees as damages in his claim for slander of title. We also find important the fact that the jury instructions explicitly stated that attorney fees could be awarded as damages

in slander of title actions and that, at least with regard to some claims, attorney fees would be calculated postverdict by the court. This suggests that the jury believed it was supposed to decide whether attorney fees had been incurred without attempting to affirmatively establish the amount of attorney fees.

¶ 86 Because attorney fees may be awarded in some circumstances as special damages in cases of slander of title, the jury verdict in this case can be reconciled. It is reasonable to construe the judgment as indicating that Branson proved slander of title and that the only damages the jury found he incurred were the damages necessary to clear the clouds from his title. This construction renders the jury's answers on the special verdict form consistent. Because the verdict can be read harmoniously, the trial court erred when it concluded that the jury failed to follow the instructions on the special verdict form. Therefore, we reverse the trial court's grant of JNOV with regard to Branson's slander of title claim. We remand so that the trial court may determine the amount of attorney fees that Branson reasonably incurred in remedying the slander of his title.[68]

B. *Because in a Case for Breach of Fiduciary Duty, Attorney Fees May Not Form the Basis of a Damages Award, the Jury Verdict Is Irreconcilably Inconsistent*

¶ 87 In contrast to claims for slander of title, claims for breach of fiduciary duty cannot be based on a damages award comprised solely of attorney fees. As mentioned, the general rule for recovery of attorney fees in tort cases is that a party is not entitled to fees absent a statutory or contrac-

---

67. Restatement (Second) of Torts § 633(1)(b).

68. We stress that this holding is not an invitation to relitigate all attorney fees issues in this case. The award of attorney fees as special damages is separate and distinct from the requests for attorney fees that were previously denied on the basis that neither party was entitled to fees as a prevailing party in this litigation. Further, while bringing a quiet title action and a claim for slander of title may have been reasonably necessary to remove clouds from Branson's title, the other claims surrounding the brothers' business venture and the claims surrounding the brothers' reciprocal assaults were unrelated to rectifying the slander of title. Thus, the trial court must endeavor to assess in isolation the costs incurred specifically in association with the quiet title and slander of title claims.

tual entitlement.[69] As discussed, both our case law and the Restatement (Second) of Torts recognize slander of title cases as an exception to this general rule. This stands in marked contrast to claims for breach of fiduciary duty. First, with regard to claims for breach of fiduciary duty, the Restatement (Second) of Torts employs the general rule that "damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation."[70] The Restatement clearly states that slander of title claims are not subject to this general provision, but it does not indicate that a similar exception exists for claims for breach of fiduciary duty. Further, the parties have not directed us to any case law that persuades us that such an exception applies in Utah.

¶ 88 Branson attempts to bring his claims within the holding of *Campbell v. State Farm Mutual Automobile Insurance Co.*[71] In that case, we dealt with the availability of attorney fees in third-party bad-faith suits against insurance companies.[72] We had previously adopted an exception to the general attorney fees rule that permitted plaintiffs in first-party bad-faith suits against insurance companies to recover their fees.[73] In *Campbell*, we extended that exception to third parties who successfully bring bad-faith claims.[74] But *Campbell* is clearly distinguishable from the case at hand. First, attorney fees in *Campbell* were permitted as a component of consequential damages—damages like "loss of a home or business, damages flowing from bankruptcy, [or] mental anguish"—that naturally and foreseeably flow from an insurance company's bad-faith dealing.[75] We did not consider whether an insured could bring a claim for breach of fiduciary duty if that claim's sole measure of damages consists of the attorney fees expended in bringing the claim. Therefore, even if *Campbell* reached all claims for breach of fiduciary duty, it does not reach as far as the facts of this case.

¶ 89 Second, and most important, even if attorney fees ought to be available as consequential damages in all claims for breach of fiduciary duty, we decline the invitation to adopt such a rule where the party has failed to prove any damages resulting from the breach. Such a rule would permit claims for breach of fiduciary duty to be based only on the harm incurred in bringing a successful claim for breach of fiduciary duty. Where no other damage has been suffered by the plaintiff, it makes little sense to let the party recover attorney fees merely for proving that an otherwise harmless breach of fiduciary duty has occurred.

¶ 90 We are not presented with a situation where a party proved a perfectly viable claim for breach of fiduciary duty and then sought attorney fees as a prevailing party. Instead, we are presented with a claim for breach of fiduciary duty apparently based on no damages having been incurred beyond the costs of bringing a lawsuit. Such a claim is impermissible, and no exception to our general rule for attorney fees can successfully be invoked to salvage it. In contrast to the jury verdict for the claim of slander of title, there is no reasonable construction of this portion of the jury verdict that can be adopted to reconcile the fact that Branson suffered no harm related to Marvin's breach of fiduciary duty. Accordingly, the district court did not err when it granted JNOV as to this claim.

## CONCLUSION

¶ 91 We affirm the trial court's judgment in all respects but one. We reverse the trial court's judgment with regard to Branson's

---

69. *See Rawlings*, 2007 UT 97, ¶ 5, 175 P.3d 1036; Restatement (Second) of Torts § 914 cmt. a.

70. Restatement (Second) of Torts § 914(1); *see also id.* § 874 cmt. b (specifically addressing breach of fiduciary duty claims and incorporating by reference the rules set forth at Restatement sections 901–32, including section 914(1)).

71. 2001 UT 89, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

72. *See id.* ¶¶ 120–21.

73. *See id.*

74. *See id.*

75. *Id.* ¶ 120.

slander of title claim. When the trial court granted JNOV with regard to this claim, it erred because the jury's finding that Marvin should be required to pay Branson's attorney fees is consistent with the ability to recover attorney fees incurred in remedying the disparaging publication that led to the slander of title. We remand for the purpose of determining the amount of attorney fees reasonably incurred by Branson in successfully remedying the slander of his title.

¶ 92 We affirm the trial court's judgment in all other respects. With regard to Branson's claim for malicious prosecution, we conclude that the criminal proceedings that gave rise to that claim were not terminated in Branson's favor. Thus, although we do not reach the issues raised by the trial court's grant of summary judgment on this claim, we affirm the trial court's judgment on this alternative ground. We also affirm the trial court's decision not to award Marvin attorney fees as the prevailing party. We find that the trial court had discretion to find that neither party prevailed in this litigation, which the trial court considered "disastrous," because the trial court correctly considered, among other things, the relative success of both parties and the importance of the claims on which each party prevailed. Finally, we affirm the trial court's grant of JNOV on Marvin's claim for breach of fiduciary duty because such a claim cannot be based solely on the attorney fees related to litigating the claim. Therefore, we affirm in part, reverse in part, and remand for additional proceedings.

¶ 93 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge KENNEDY concur in Associate Chief Justice DURRANT'S opinion.

¶ 94 Justice WILKINS does not participate herein; District Judge JOHN PAUL KENNEDY sat.