Caleen Lee BRAITHWAITE and Kenneth Lee, individually and as guardians ad litem for their minor child Misty Lee, Plaintiffs and Appellants,

v.

WEST VALLEY CITY CORPORATION, a political subdivision of the State of Utah; Salt Lake County, a political subdivision of the State of Utah; Granite School District, and Rachel L. Martinez, Defendants and Appellee.

No. 940247.

Supreme Court of Utah.

May 17, 1996.

Rehearing Denied Aug. 27, 1996.

M. David Eckersley, Salt Lake City, for Braithwaites.

Allan L. Larson, Andrew M. Morse, Salt Lake City, for West Valley City.

DURHAM, Justice:

Plaintiffs Caleen Braithwaite and Kenneth Lee, individually and as guardians of their minor child Misty Lee (the Braithwaites) appeal the trial court's grant of defendant West Valley City Corporation's motion for judgment notwithstanding the verdict and its conditional grant of a new trial. We reverse in part and affirm in part.

On December 16, 1986, seven-year-old Michael Shay Lee and his eight-year-old sister Misty were walking west on the south side of 3785 South toward the Douglas T. Orchard Elementary School when Michael was struck and killed by a car. In September of 1987, the Braithwaites filed suit against defendants West Valley City, Salt Lake County, Granite School District, and the driver of the automobile. The Braithwaites claimed, inter alia, that West Valley City negligently failed to provide an adequate route for pedestrian travel. The street on which the accident occurred had no sidewalks; however, a wide white strip down each side of the paved asphalt provided two six-foot walkways for pedestrian travel. Among other allegations, the Braithwaites contend that the City was negligent in allowing automobiles to park in the pedestrian travel lane and in allowing property owners to build fences encroaching on the pedestrian lane. They claim that on the day of the accident, Michael was forced across the white line and into the roadway to avoid a car and a fence in his path. On October 20, 1989, the trial court granted the City's motion for summary judgment on the ground that the acts or omissions complained of were discretionary, thereby granting the City immunity under the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –36.[1]

The Braithwaites appealed the trial court's grant of summary judgment in favor of the City, and in *Braithwaite v. West Valley City Corp.*, 860 P.2d 336, 338 (Utah 1993) (*Braithwaite I* ), we stated that "it has long been the law in Utah ... that a municipality has a duty to exercise ordinary care to keep streets which it has opened for travel and which it has invited the public to use in a reasonably safe condition for travel." Recognizing that the City has no legal duty to construct sidewalks, this court nonetheless reversed the trial court's grant of summary judgment on the following basis:

> Plaintiffs alternatively contend that the City was deficient in the duty it owes ... [by allowing] an abutting property owner to encroach upon the street by building a fence almost to the edge of the asphalt paving.... While the parties dispute whether the accident occurred for that reason, the summary judgment granted to the City was not based on the lack of a material issue of fact, but only on the legal issue

---

1. The trial court also granted summary judgment in favor of Salt Lake County and Granite School District. However, the Braithwaites did not appeal the trial court's grant of summary judgment in favor of either of these parties.

of governmental immunity. The factual issue was not resolved on the motion for summary judgment. If, as plaintiffs assert, their child was killed because he was forced out into the traffic lane due to a parked car and an encroaching fence, a material question of fact then arises whether the City has discharged its obligation to provide reasonably safe conditions for pedestrian travel.

*Id.* at 338–39.

On remand, the jury returned a verdict against the City, finding that the street was unreasonably dangerous and that this danger was the proximate cause of Michael's death. The City then filed a rule 50(b) motion for judgment notwithstanding the verdict (j.n.o.v.) and an alternative rule 59(c) motion for a new trial. In its minute entry dated May 4, 1994, the trial court concluded that competent evidence did not support the verdict and that "the Jury was swayed [by] sympathy, passion, and/or prejudice." In support of its decision to enter a j.n.o.v., the trial court noted that the only evidence supporting the "car/fence" scenario came from the Braithwaites' daughter Misty and that all other witnesses failed to identify either a car or a fence. The trial court also conditionally granted the City's motion for a new trial.

On appeal, the Braithwaites raise three issues: (1) whether the trial court erred in granting the City's j.n.o.v. motion, (2) whether the trial court erred in conditionally granting the City's motion for a new trial, and (3) whether the trial court erred in submitting an unduly restrictive jury instruction regarding the consideration of what facts constitute the existence of an unreasonably dangerous condition.

 The Braithwaites first contend that the trial court erred in granting a j.n.o.v. when substantial evidence supported the jury's verdict. This court has stated, "In passing on a motion for a j.n.o.v., ... a trial court has no latitude and must be correct." *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 799 (Utah 1991). Furthermore, "[t]he trial court [is] justified in granting a j.n.o.v. only if, after looking at the evidence and all of its reasonable inferences in a light most favorable to [the nonmoving party], the trial court

conclude[s] that there [is] no competent evidence to support a verdict in [the nonmoving party's] favor." *Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1066 (Utah 1996); *see also McCloud v. Baum,* 569 P.2d 1125, 1127 (Utah 1977) (holding that on appeal of trial court's grant of j.n.o.v., this court views evidence in light most favorable to nonmoving party and affords this party benefit "of all inferences which the evidence fairly supports"). However, "[i]f reasonable persons could reach differing conclusions on the issue in controversy, a jury question exists and the motion should be denied." *McCloud,* 569 P.2d at 1127. Thus, on appeal we must review the record and determine whether there is any basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination that the City was negligent. If we find support, we must reverse the trial court's grant of a j.n.o.v.

 To recover for negligence, a plaintiff must show that the defendant owed the plaintiff a duty, the defendant breached that duty, the breach of that duty was the proximate cause of the plaintiff's injuries, and the plaintiff in fact suffered injuries. *Jackson v. Righter,* 891 P.2d 1387, 1392 (Utah 1995); *Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993); *Reeves v. Gentile,* 813 P.2d 111, 116 (Utah 1991).

During the trial, the Braithwaites presented evidence from five witnesses supporting their theory that the City breached a duty it owed to Michael and that this breach was the proximate cause of Michael's death. During direct examination of the Braithwaites' first witness, John Newman, former city manager for West Valley City, counsel put forth evidence of the City's duty to maintain the streets in a reasonable condition and the possible breach of this duty by not taking adequate precautionary steps to reduce a potentially hazardous condition. Mr. Newman testified that prior to Michael's death, the City knew that the community was concerned about the safety of 3785 South. Mr. Newman acknowledged receipt of a letter from Maxine Record, a member of Citizens For a Safer 3785 South. The letter, dated

August 28, 1986, recommended several alternative plans to improve the street's safety, including the installation of double yellow lines, stop signs, and drainage dips. In response, by letter dated September 18, 1986, Mr. Newman indicated that the City had authorized the installation of white pedestrian lines but that the group's other proposals had been rejected. Mr. Newman also testified as to the lack of parking restrictions along 3785 South prior to Michael's death and the encroachment by property owners on the City's right-of-way which the City had failed to remedy.

Misty testified that the presence of a car and abutting fence forced Michael into the south traffic lane: "I just remember walking. And we came to the car that we had to go around. We walked around the back end of it. It was parked a little bit out into the white line.... Michael was going around and he got hit right after that." When asked whether she and Michael could have circled around the car on the curb side, Misty stated: "[W]e would have had to go between the car and the fence, which had bushes growing out of it. And there was no room."

On cross-examination, the City raised several issues concerning Misty's testimony: the inconsistency of her recollection of where the accident occurred and the position of Michael's body; her misidentification of the parked car shown in exhibit photographs as belonging to her mother; her misidentification of the children that accompanied her and Michael on that day; and her general confusion about the sequence of events.

The City presented evidence from six witnesses, including five eye witnesses. Two of the defense witnesses were primarily called to refute the allegation that a parked car forced Michael into the traffic lane. Linda McLemore, who was driving approximately one and one-half car lengths behind the car that hit Michael, stated that she saw Michael before the accident and that Michael was "standing on the white line with his back to the traffic facing the girls." Ms. McLemore also testified that she pulled over to the right side of the road to avoid hitting Michael and that no car was parked in the pedestrian walkway. Susan Wanlass, who had been traveling in the westbound lane, testified that she had noticed the children playing "out into the street" and upon checking in her rear view mirror, she witnessed the accident. Ms. Wanlass made a U-turn and parked directly behind Ms. McLemore on the south side of the street. Ms. Wanlass' testimony further supported the City's position that no car was blocking the pedestrian travel lane.

The two children who had accompanied Michael and Misty to school that day, Michelle and Michael Roper, also testified that Michael had been playing on the white line and that no car was present in the immediate area. Armaund Casanova, police detective for the City, testified as both an expert and the officer in charge of the accident scene. He testified that in his opinion the accident happened further down the street from the place Misty identified as the point of impact and that in the area of the accident there was no parked car to obstruct the children's path. His opinion was based on the fact that no vehicles were parked in the general vicinity when he arrived at the scene and that there was no visible physical evidence that a vehicle had been parked in the vicinity prior to his arrival.

On cross-examination, the Braithwaites' counsel elicited testimony regarding the unreasonably dangerous condition of the street and raised doubt as to the accuracy of the testimony of each of the City's witnesses. As for Ms. McLemore's and Ms. Wanlass' testimony, the Braithwaites' counsel established that both witnesses were concerned about the area because of their knowledge of prior fatalities and the dangerous character of the street and that they had seen parked cars in the pedestrian lane on prior occasions. On cross-examination of Michelle Roper, plaintiffs' counsel established, among other things, that Michelle had difficulty in the past remembering the day of the accident and that she had stated on a prior occasion that Michael was within the white line when the car hit him. She then conceded that those prior statements were probably the correct version. Counsel also attacked the veracity of James Roper's testimony by presenting evidence tending to establish that he had an incomplete and confused memory of the

events. Finally, Detective Casanova's conclusions were put in doubt when he conceded on cross-examination that a longer estimate for reaction time would have placed the accident at a further point down the road and that Michael could have been carried forward for some distance.

In summary, although the Braithwaites arguably failed to present substantial evidence demonstrating that the City was negligent, it cannot be said that there was no competent evidence to support the verdict. In addition to the evidence presented in the Braithwaites' case in chief, the evidence presented by the City did not absolutely refute, contradict, or make impossible the general version of events testified to by Misty Lee. Thus, a reasonable juror could have found that the City breached its duty to exercise ordinary care to keep streets in a reasonably safe condition for travel. Accordingly, we hold that the trial court erred in granting defendant's motion for judgment notwithstanding the verdict.

■ Because we reverse the trial court's grant of a j.n.o.v., we must now address whether the trial court erred in conditionally granting the City a new trial. Under rule 50(c)(1) of the Utah Rules of Civil Procedure, if the trial court grants a j.n.o.v., it is required to rule on any motion for a new trial. Pursuant to rule 50(c)(1), the trial court must identify at least one of the seven grounds listed in rule 59(a) in support of its grant of a new trial: "[T]he trial court has no discretion to grant a new trial absent a showing of one of the grounds specified in Rule 59 of the Utah Rules of Civil Procedure." *Tangaro v. Marrero*, 13 Utah 2d 290, 373 P.2d 390, 391 n. 2 (1962); *see also In re Estate of Justheim*, 824 P.2d 432, 433 (Utah.Ct.App.1991).

Although the trial court did not explicitly set forth its reasons for conditionally granting a new trial, it is apparent that the court relied on both insufficiency of the evidence and an error in law. *See* Utah R.Civ.P. 59(a)(6), (7). First, in granting the City's motion for j.n.o.v., the trial court concluded that there was no "competent evidence [to] support[ ] the verdict and . . . that the Jury was swayed [by] sympathy, passion, and/or prejudice." This finding is analogous to one

of insufficiency of the evidence. Second, the trial court stated that it had committed legal error by not providing the jury with the proper questions in special interrogatories and by allowing in evidence of prior accidents that were not substantially similar to the case at hand. Given the trial court's references to insufficiency of the evidence and legal error, we will consider its grant of a new trial as based on these grounds. *Accord Goddard v. Hickman*, 685 P.2d 530, 532 (Utah 1984).

■ This court has held, "A ruling on a motion for a new trial will not be disturbed on appeal except when there is a clear or manifest abuse of discretion." *Amoss v. Bennion*, 30 Utah 2d 312, 517 P.2d 1008, 1010 (1973); *see also Goddard*, 685 P.2d at 534–35 ("[T]his court will presume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary."). Nevertheless, a trial court should carefully consider whether it is appropriate to grant a new trial on the basis of insufficiency of the evidence. In *Goddard*, 685 P.2d at 532, this court noted, "The power of a trial judge to order a new trial is to be used in those rare cases when a jury verdict is manifestly against the weight of the evidence." *See also Nelson v. Trujillo*, 657 P.2d 730, 732 (Utah 1982) ("A second trial is not without its costs in terms of scarce litigant and judicial resources. . . . Consequently, the trial judge's prerogative to grant a new trial on an evidentiary basis under Rule 59(a)(6) should be exercised with forebearance.").

■ However, when reviewing an order for a new trial based on insufficiency of the evidence, we apply a much narrower standard than that applied by the trial court in granting the new trial. *Id.* Under this narrower standard, we must determine whether there was " 'substantial competent evidence which would support a verdict for [the moving party].' " *Id.* (quoting *Nelson*, 657 P.2d at 732). Therefore, the issue is whether the City presented substantial competent evidence which would have supported a verdict in its favor on the issue of liability.

Our determination that there was sufficient evidence supporting the jury's verdict in favor of the Braithwaites does not preclude a finding that the City presented substantial competent evidence supporting its position. Referencing the aforementioned testimony presented by the City in defense of the Braithwaites' negligence claim, we cannot say that the trial court abused its discretion in finding that the evidence was sufficient in amount and credibility to support a verdict in favor of the City. Therefore, we affirm the trial court's conditional grant of a new trial.

Because this court affirms the trial court's grant of a new trial, we deem it prudent to provide guidance to the trial court on two additional issues: (1) whether the trial court submitted an unduly restrictive jury instruction regarding the consideration of what facts constitute the existence of an unreasonably dangerous condition, and (2) the correct standard for the admissibility of prior accidents.

 First, the Braithwaites contend that the trial court submitted an unduly restrictive jury instruction limiting what set of facts can constitute the existence of an unreasonably dangerous condition. Jury Instruction No. 9 stated:

> [T]he plaintiffs claim the defendant was negligent by maintaining an unreasonably dangerous road, in that it allegedly allowed a property owner to build a fence almost to the edge of the asphalt pavement, and that when a car was allegedly parked near the fence it forced Michael off the shoulder and into the roadway.

The trial court submitted this instruction on its mistaken belief that on the basis of our decision in *Braithwaite I*, the Braithwaites were limited to recovering only under this theory of liability. Contrary to the trial court's supposition, *Braithwaite I* did not limit the theories of liability on which the Braithwaites may present evidence of an unreasonably safe condition. The Braithwaites identified several possible grounds of liability in their complaint, including the City's alleged failure to restrict parking in the pedestrian lane. On remand, the Braithwaites may present evidence under any theory which establishes that the City breached its obligation to provide reasonably safe conditions for pedestrian travel.[2]

 Finally, we address the trial court's decision to allow evidence of a prior accident for the purpose of showing that the City had notice of 3785 South's unreasonably dangerous condition. Prior to trial, the City filed a motion in limine, in part, to exclude evidence of any prior accidents on the ground that the prior accidents were not substantially similar to the case at hand. The trial court denied the City's motion under the following rationale:

> My view is that the City should be charged with a duty to know any information about that location that would be dangerous. For instance, they should be charged with a duty to know that there was a woman that was hit in an accident at that location some time earlier, whether it's by a drunk motorcyclist, as was the case.... It seems to me that it should be admissible to show that there was a prior accident and a prior fatality.

The trial court, however, erred in allowing evidence of a prior accident that was not substantially similar to the accident causing Michael's death. In *State v. Stewart*, 12 Utah 2d 273, 365 P.2d 785, 786 (1961), this court stated:

> The general rule is that evidence of similar accidents or injuries at or near the same place is admissible if not too remote in point of time, provided a similarity exists between the circumstances surrounding the prior accident and the one before the court.... Evidence that would merely prove that many accidents had occurred at the [location] or that it was one of the most accident-prone [locations] in the city would be properly excludable.

**2.** The trial court's conditional grant of the City's motion for a new trial was based in part on the court's error in failing to limit the Braithwaites' theory of liability in the special interrogatories submitted to the jury. Because *Braithwaite I* did not limit the Braithwaites to recovering under only the "car/fence" theory of liability, the trial court's failure to limit the theory of liability in the special interrogatories does not constitute legal error.

(Footnote omitted.) In this case, there is little, if any, similarity between the prior accident and the accident resulting in Michael's unfortunate death.

For these aforementioned reasons, the trial court's grant of the City's j.n.o.v. is reversed, and the case is remanded for a new trial consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur.