F I L E D
**United States Court of Appeals
Tenth Circuit**

**AUG 20 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DEBBIE BRAGG,

      Plaintiff-Appellant,

v.

WILMA BUCK, trustee for the MAX C.
BUCK FAMILY TRUST, successor-in-
interest to MAX C. BUCK and BUCK
HEREFORD RANCH,

      Defendant-Appellee.

No. 96-4091
(D.C. No. 94-CV-127-S)
(District of Utah)

ORDER AND JUDGMENT[*]

Before **KELLY**, Circuit Judge, **HENRY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

On May 24, 1992, Debbie Bragg was seriously injured in an automobile accident

in Utah. At the time, Bragg was a passenger in an automobile being driven by Sheldon

Brett Windley. The vehicle driven by Windley collided with a pickup truck owned by

Max Buck. Buck had stopped his truck, at night, in the lane in which Windley was

traveling.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Thereafter, Debbie Bragg filed a personal injury action in the United States District Court for the District of Utah, naming as defendants Sheldon Windley and Max Buck. Jurisdiction was based on diversity. 28 U.S.C. § 1332. For her first cause of action, Bragg charged Windley with negligent driving which caused her personal injuries. More specifically, Bragg charged Windley with driving under the influence of alcohol, as well as speeding and failing to maintain control of the vehicle. In the second count of her complaint, Bragg charged Buck with negligently parking his pickup truck, which she alleged also caused and contributed to her injuries. Bragg later settled her claim against Windley for $70,000 and dismissed her claim against him.

By first amended complaint, Bragg substituted Wilma Buck, Trustee for the Max Buck Family Living Trust, as successor-in-interest to Max Buck, who died some time after the accident. Wilma Buck filed an answer to Bragg's complaint, alleging, *inter alia,* that Bragg was, herself, guilty of negligence, and, further, that Windley also was negligent and that under Utah law his negligence should be imputed to Bragg. After discovery, Buck filed a motion for summary judgment. Without oral argument, the motion was granted, and the district court dismissed Bragg's claim against Wilma Buck with prejudice. Bragg appeals. The background facts, as developed through pre-trial discovery, are not in dispute, and reference thereto is necessary to an understanding of our disposition of the matter.

The accident here involved occurred on State Road 16, an east-west highway which leads to Salt Lake City from the west. It is a two-lane highway, i.e., one lane to the east and one lane to the west. On May 24, 1992, the day of the accident, at about 10:30 p.m., Richard Winters was traveling east on State Road 16 towards Salt Lake City when, approximately .8 of a mile east of Woodruff, Utah, he struck a bull which had strayed onto the highway. The bull was killed as a result of the collision and it came to rest approximately one foot from the southern edge of the road. Winters' Jeep veered off the road to the south.

Winters flagged down a passing motorist who said he would report the accident to the local Sheriff's office. Also, a neighbor stopped by the Buck residence and advised either Max Buck or his wife, Wilma, of the accident, suspecting that the bull might belong to the Bucks. Max Buck immediately traveled to the scene of the accident in his 1978 Ford F250 four-wheel drive pickup truck where he parked in the eastbound travel lane, facing west, for the purpose of shining his headlights on the dead animal so that he could ascertain whether it was his bull. More specifically, the Buck vehicle was parked so that the driver's side was on the white fog line, obstructing approximately half of the eastbound lane.

The collision which is the subject of this litigation occurred some five to ten minutes after Buck parked his truck in the eastbound traffic lane, facing west. It would appear that the pickup truck had its headlights and emergency lights on, although there

- 3 -

were no flares. It would also appear that at least two eastbound vehicles had passed the stopped pickup truck without incident. While Max Buck and Winters were using flashlights to inspect and identify the bull, which, incidentally, did belong to Buck, an eastbound vehicle driven by Windley, in which Bragg was a passenger, collided with the Buck truck causing very severe injuries to Bragg. The collision was virtually head-on, and after impact the Windley-driven vehicle spun across the westbound lane of travel, finally stopping some 76 feet down the road. The Buck truck was pushed off the highway into the barrow pit, traveling some 40 feet and rotating approximately 180 degrees until it faced east.

Now to Windley and Bragg. In his deposition, Windley stated that on the day of the accident he consumed approximately eight beers between 12:30 p.m. and 7:30 p.m. in the Legal Tender lounge in Evanston, Wyoming, where Bragg was a waitress. At about 7:30 p.m., Windley and Bragg left the lounge to drive to Windley's home in Woodruff, Utah. At that time, Bragg drove her car, a Chrysler LeBaron convertible, with Windley riding as a passenger.[1] En route, the couple stopped at a gas station where Windley purchased a six-pack of beer. Later that same evening, Windley and Bragg decided to return to Evanston, Wyoming, where Bragg resided. Before leaving Woodruff, Bragg

---

[1]In answer to an interrogatory, Bragg stated unequivocally that she was the owner of the Chrysler LeBaron convertible. Such being the case, we reject counsel's suggestion that the vehicle had only been "given" to Bragg by a former boyfriend, and that she was not the true owner.

asked Windley to drive her car, and her, back to Evanston. He agreed. While driving to Evanston, Windley drank from a can of beer he had purchased earlier. During the drive, Bragg was awake and conversed with Windley.

It was in this general setting that at about 11:00 p.m. on May 24, 1992, Windley drove Bragg's automobile more-or-less head-on into Buck's pickup truck. Windley stated that he simply didn't see the Buck truck nor did he see any lights on the truck. In this connection, there were no skid marks laid down by Bragg's vehicle. Windley's blood alcohol was measured as .18 and he was charged with, and later convicted of, driving under the influence. Buck was cited for improper parking.

Bragg's accident reconstruction expert testified in his deposition that there were two causes of the accident, one, Buck's negligence in parking his truck in the eastbound lane of travel, and, two, Windley's lack of attention. However, this same witness, in response to a question as to who was "primarily at fault," went on to state that Windley's inattention was "primarily a contributing factor" in causing the accident.

In Wilma Buck's motion for summary judgment, she asked for summary judgment in her favor on the ground that, under the facts and circumstances established through discovery, there was, under Utah law, a rebuttable presumption that Windley was Bragg's agent. In this connection, Wilma Buck contends that, this presumption not having been rebutted, Windley's negligence should be imputed to Bragg, and that such negligence, as a matter of law, was greater than any negligence on the part of Max Buck. Alternatively,

Wilma Buck asked for partial summary judgment on the question of whether Windley's negligence should be imputed to Bragg. As indicated, the district court granted Wilma Buck's motion for summary judgment in a 15-page unpublished memorandum opinion, holding that, under the facts and circumstances as established through discovery, Windley's negligence was imputed to Bragg and that such negligence was greater than any negligence on the part of Max Buck.

As indicated, the district court held that, under Utah law, Windley's negligence was imputed to Bragg. In so doing, the district court relied almost entirely on *Fox v. Lavender,* 58 P.2d 1049 (Utah 1936). On this particular issue, the parties in this court are primarily concerned with whether, under *Fox,* there is a rebuttable presumption that Windley was Bragg's agent and, therefore, unless this presumption is rebutted, his negligence should be imputed to Bragg. Bragg's counsel suggests that *Fox* is an "old" case (1936), and is no longer "good" law, and should not be followed.

Be that as it may, we do not believe that *Fox* has real application to the present facts. As indicated*, Fox* was concerned with when, and under what circumstances, there is a rebuttable presumption that a driver is an agent for an owner-occupant such as to impute his negligence to the owner-passenger, as his principal. The present record is such that we need not concern ourselves with rebuttable presumptions of agency, since the record, in our view, clearly shows that there was, in fact, a principal-agency relationship between Bragg and Windley.

Bragg testified in her deposition that she drove her car from Evanston, Wyoming, to Windley's home in Woodruff, Utah, with Windley riding as a passenger. She went on to state that about an hour or so later they decided to return to Evanston, where Bragg resided. Bragg stated that she was tired and that since she didn't like to drive at night, she asked Windley, point blank, if he would drive her, and her car, back to Evanston. According to both Bragg and Windley, Windley agreed to drive Bragg, in her car, back to Evanston. And Windley was so doing at the time he collided with the Buck truck. Clearly, as Windley drove Bragg and her car to Evanston, there was a principal-agent relationship between Bragg and Windley.[2] The general rule is that the acts of an agent, which would include negligent acts within the scope of his agency, are imputed to his principal.[3] It is as though the principal was driving the vehicle, instead of his agent.

---

[2] *See* RESTATEMENT (SECOND) OF AGENCY § 1 (1958).

[3] SEE HAROLD GILL REUSCHLEIN & WILLIAM A. GREGORY, THE LAW OF AGENCY AND PARTNERSHIP, 236-37 (West Publishing, 2d ed. 1990); RESTATEMENT (SECOND) OF AGENCY § 317 (1958); *see also Knudson v. I. L. Boren,* 261 F.2d 15 (10th Cir. 1958) (holding that driver of automobile was agent for owner and that his negligence was imputable to owner).

In *Reed v. Hinderland,* 660 P.2d 464, 470 (Ariz. 1983), the Supreme Court of Arizona held that the mere presence of the owner in an automobile driven by another does not create any presumption of master-servant relationship or joint venture and that the "existence of such a relationship must be proved by the party asserting it in the same manner as any other issue in the case." *See also Watson v. Regional Transp. Dist.,* 762 P.2d 133 (Colo. 1988) (ruling that there is no rebuttable presumption that a driver's negligence is imputed to an owner-passenger so as to limit the latter's recovery in a negligence action against a third party).

As indicated, Utah is a comparative negligence state. Accordingly, even though the negligence of Windley is imputed to Bragg, such would not preclude her from recovering from Wilma Buck if Max Buck's negligence was greater than Windley's negligence. However, in this regard, the district court held that Windley's negligence was greater than Max Buck's negligence and that, such being the case, Bragg could make no recovery from Wilma Buck. It was on this basis that the district court granted Wilma Buck's motion for summary judgment and dismissed Bragg's claim against her with prejudice. We reverse this part of the district court's judgment.

The issues of negligence and comparative negligence are generally issues of fact to be determined by the fact finder, namely a jury, and not by the court. *Braithwaite v. West Valley City Corp.,* 921 P.2d 997, 999 (Utah 1996); *White v. Deseelhorst,* 879 P.2d 1371, 1374 (Utah 1994) (quoting *Ingram v. Salt Lake City*, 733 P.2d 126, 126 (Utah 1987)); *Apache Tank Lines, Inc. v. Cheney,* 706 P.2d 614, 615 (Utah 1985). It is not really disputed that Max Buck improperly parked his truck in the eastbound lane of travel on State Road 16 at night. It is arguable that Buck could have parked his truck in a different spot, rather than in the face of oncoming eastbound traffic, and still have been able to inspect the dead bull. Witnesses said that Buck did have his headlights and overhead lights on, though Windley testified he saw no lights. No flares were set. And Buck was charged with negligent parking. We agree that undoubtedly Windley was guilty of negligent driving. Indeed, it is apparently conceded by the parties that both Windley and

- 8 -

Max Buck were negligent. However, we are of the view that, all things considered, a jury, and not a judge, should determine the negligence of Windley vis-a-vis the negligence of Buck.

That part of the judgment imputing Windley's negligence to Bragg is affirmed.[4] That part of the judgment holding that Windley's negligence was, as a matter of law, greater than Buck's negligence is reversed. Accordingly, the district court's judgment dismissing Bragg's claim against Buck is reversed and the case is remanded for further consideration consistent with this opinion.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

[4]Bragg's motion filed in this court to certify to the Utah Supreme Court the question of whether Windley's negligence should, under Utah law, be imputed to Bragg is denied. *See Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 472 (11th Cir. 1993) and *Croteau v. Olin Corp.,* 884 F.2d 45, 46 (1st Cir. 1989).