2017 UT App 21

# THE UTAH COURT OF APPEALS

CHARLES C. REHN,
Appellant and Cross-appellee,

*v.*

STEVE S. CHRISTENSEN; STEVE S. CHRISTENSEN PC; HENRIOD,
NIELSEN & CHRISTENSEN; CHRISTENSEN, CORBETT & PANKRATZ
PLLC; AND HIRSCHI CHRISTENSEN PLLC,
Appellees and Cross-appellants.

Opinion
No. 20150119-CA
Filed February 2, 2017

Third District Court, Silver Summit Department
The Honorable Ryan M. Harris
No. 130500115

Joseph E. Wrona and Jared C. Bowman, Attorneys
for Appellant and Cross-appellee

Clinton R. Brimhall, Jeremy R. Miller, Steve S.
Christensen, and D. Scott Crook, Attorneys for
Appellees and Cross-appellants

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

VOROS, Judge:

¶1 Charles C. Rehn sued Steve S. Christensen and related parties (collectively, Christensen) for slander of title and to remove an attorney's lien Christensen had filed on Rehn's property. Rehn prevailed on some of his claims by way of summary judgment and prevailed on the remainder of his claims at trial. The district court denied Rehn's request for attorney fees and also denied Christensen's motion for a directed verdict and various post-trial motions. Both parties appeal. We affirm.

BACKGROUND

¶2     In 1996, Rehn retained Christensen to represent him in a divorce. The case went to trial in 1997. Rehn did not own any real property during the marriage, and the district court entered findings stating that there was "no real property owned by the parties and thus no allocation is necessary." Rehn lived in a rented home in Park City, Utah (the Property).

¶3     The Property lies at the heart of this dispute. The parties disagree about a number of facts surrounding the Property, including when Rehn first consulted Christensen, when Rehn first had the option to purchase the Property, and when, if ever, Rehn discussed the Property with Christensen during the divorce proceedings. Christensen argues that Rehn had a "pre-divorce goal" to purchase the Property and the two had a "15-minute conversation" during which Christensen advised Rehn to wait until after the divorce to purchase the Property. Rehn argues that such a conversation never occurred and notes that Christensen could not remember when or where the alleged conversation occurred.

¶4     In October 1997, Rehn retained Christensen to appeal certain aspects of the divorce decree and signed an engagement letter (the Retainer Agreement). The Retainer Agreement provided that Christensen's law firm, Henriod, Nielsen & Christensen (HNC), was entitled to an attorney's lien on Rehn's real property for past-due billings:

> [HNC] shall be entitled to a lien for services rendered including a lien on your residence, other real property or any subsequent settlement or judgment, as permitted [sic] the laws of the State of Utah or any other state where services are provided, in the event the bill has not been paid in full with [sic] thirty (30) days of billing.

The Retainer Agreement also included an attorney-fee provision:

> In the event legal action is taken to enforce this agreement the law of Utah shall apply and the prevailing party shall be entitled to reasonable costs and attorney's fees.

Around this time, Christensen left HNC to form a solo practice, Steve S. Christensen PC (SSC). HNC assigned its right to collect Rehn's outstanding attorney fees to Christensen.

¶5 Rehn purchased the Property in 2000. The following year Christensen recorded an "Amended Notice of Attorney Lien" (the Lien) against it. The district court later found that the Lien contained a number of false statements. First, the Lien did not "amend" any earlier filing, because no earlier lien had been filed. Second, the Lien incorrectly described the Property as the "subject" of Christensen's representation of Rehn, whereas it was at most only "connected to" that representation. Third, the Lien incorrectly stated that the Property was awarded to Rehn in the original divorce action, although Rehn did not buy the Property until 2000, and no real property was at issue in the divorce. The Lien also incorrectly cited a superseded section of the Utah Code that purportedly authorized the Lien and incorrectly stated that 1995 rather than 1996 was the year when Rehn first retained Christensen. Finally, the Lien included billing inaccuracies.

¶6 Christensen did not notify Rehn of the Lien when Christensen recorded it. Approximately two months later, after learning that Rehn planned to refinance the Property, Christensen sent a letter informing Rehn of the Lien:

> I am told by lenders that you are able to withdraw a higher percentage of your equity if the money is to refinance existing obligations rather than to obtain cash for yourself. In the event it would be

> helpful, I have filed the enclosed attorney's lien for your use in a refinance. If it turns out that this lien will not be useful to you, I can release the lien.

The Lien remained on the Property for years as Christensen and Rehn negotiated Rehn's outstanding attorney fees.

¶7    In 2004, Rehn filed a Chapter 7 bankruptcy petition. He listed Christensen as a creditor in his bankruptcy schedules, showing a debt of $43,244 in outstanding attorney fees. Rehn did not specifically challenge the validity of the Lien. The bankruptcy court discharged the debt, but Christensen did not release the Lien. When Rehn attempted to sell the Property in 2012, he discovered that the Lien still encumbered it. Rehn asked Christensen to remove the Lien. Christensen refused; Rehn sued.

¶8    Rehn alleged slander of title, promissory estoppel, and wrongful lien; he also sought a declaratory judgment that the Lien was void and a permanent injunction against its enforcement. Rehn's core argument asserted that Christensen had placed an invalid lien on the Property and had refused to release it unless Rehn paid exorbitant attorney fees and interest. Rehn also moved for a temporary restraining order and preliminary injunction to remove the Lien. After Rehn deposited $40,000 into an escrow account, the district court released the Lien and entered a stipulated preliminary injunction.

¶9    Christensen answered and counterclaimed, alleging that the Retainer Agreement entitled him to recover attorney fees:

> 65. SSC is entitled to receive $26,807.14 plus contractual interest at the rate of 18% per annum . . . .

> 66. SSC is entitled to receive attorney fees and costs . . . defending itself in this legal action pursuant to its contract with Rehn.

These allegations were based in part on the attorney-fee provision in the Retainer Agreement. Christensen moved for summary judgment, arguing that his Lien could not have slandered Rehn's title, because the Lien did not amount to a slanderous statement—the first element of a slander of title action. "If a person has a valid lien on property," Christensen argued, "recording a notice of that lien is not slanderous." Thus, according to Christensen, because the Retainer Agreement gave him a contractual right to record the Lien, the Lien could not be slanderous.

¶10 Rehn filed a cross-motion for summary judgment on the ground that the Lien was wrongful and void. The district court granted Rehn summary judgment, quieting title to the Property in him. The court's ruling rendered moot Rehn's claim for a permanent injunction. The court dismissed Rehn's wrongful lien claim but concluded on summary judgment that Rehn had established the first two elements of his slander of title claim—a false and slanderous statement.

¶11 The district court held a two-day jury trial on the two remaining elements of Rehn's slander of title claim—malice and damages. At trial, Christensen repeatedly argued that the Retainer Agreement gave him a contractual right to record the Lien. Christensen advanced this argument in his opening statement, his direct examination, his cross-examination, and his re-direct examination, and when discussing jury instructions.

¶12 At the close of evidence, Christensen moved for a directed verdict, arguing that no evidence existed that Christensen knew the Lien was invalid. Rehn responded that he had produced evidence from which a reasonable juror could conclude that Christensen included false statements in the Lien. The district court denied Christensen's motion.

¶13 The jury found that both remaining elements for slander of title were satisfied and awarded Rehn damages of

$77,752.29—largely to compensate him for attorney fees incurred in removing the Lien.

¶14 After trial, Christensen moved for judgment notwithstanding the verdict, asking the court to reduce the damage award to $20,000 or, alternatively, for a new trial. The district court denied Christensen's motion. Rehn, as the prevailing party at trial, moved for an award of attorney fees not covered by the slander of title damages. Rehn asserted three grounds for an award of fees: (1) the attorney-fee provision of the Retainer Agreement; (2) the Reciprocal Fee Statute found in Utah Code section 78B-5-826; and (3) the court's "inherent equitable powers." The district court denied Rehn's motion.

¶15 Addressing Rehn's first and second grounds for an award of attorney fees, the court reasoned that "[n]either party had a contractual right to recover attorney fees associated with prosecuting or defending against the slander of title claim," because "[t]he slander of title claim was not brought to enforce the terms of the contract and was not otherwise based upon the contract." Addressing Rehn's third ground for an award of attorney fees, the court declined "to exercise its equitable powers," because the court did not find "that the facts of this case distinguish it from other slander of title cases such that justice requires an award of attorney fees in addition to those already awarded by the jury, which the jury determined to be reasonably necessary to remove the cloud of title from Mr. Rehn's property."

¶16 Rehn appeals; Christensen cross-appeals.


ISSUES

¶17 Rehn asserts two claims of error on appeal. He first contends that the district court erred by not awarding him attorney fees under the Reciprocal Fee Statute. He next contends

that the district court erred by not awarding him attorney fees pursuant to its inherent equitable powers. Rehn also seeks attorney fees incurred on appeal.

¶18 Christensen asserts three claims of error in his cross-appeal. He first contends that the district court "erred in granting summary judgment in favor of Rehn on the first two elements of [Rehn's] slander of title" claim. He next contends that the district court erred in denying his motion for a directed verdict. Finally, he contends that the district court erred in denying his motion for judgment notwithstanding the verdict or for a new trial.

ANALYSIS

I. Rehn's Appeal

A.    Reciprocal Fee Statute

¶19 Rehn contends that the Reciprocal Fee Statute entitles him to an award of attorney fees and costs. Specifically, Rehn argues that Christensen's use of the Retainer Agreement "as a basis to recover Christensen's attorney fees and costs incurred by Christensen to defend against Rehn's slander of title claim . . . triggered Rehn's right to reciprocal attorney fees pursuant to Utah Code Ann. § 78B-5-826."

¶20 Christensen responds that the Reciprocal Fee Statute "does not extend to the slander of title claim because no party asserted a contract's enforceability as a basis for recovery thereunder." In essence, Christensen argues that Rehn cannot recover fees for bringing Rehn's slander of title claim, because that claim was not "based upon" contract, i.e., the Retainer Agreement.

¶21   The district court denied Rehn's motion for attorney fees on the ground that Rehn did not bring his slander of title claim "to enforce the terms" of the Retainer Agreement:

> The language of [the Retainer Agreement] only allowed a party to recover attorney fees in a legal action brought to enforce the terms of [the Retainer Agreement]. The slander of title claim was not brought to enforce the terms of [the Retainer Agreement] and was not otherwise based upon [the Retainer Agreement]. Neither party had a contractual right to recover attorney fees associated with prosecuting or defending against the slander of title claim. Therefore, [Rehn] cannot recover any fees for [his] prosecution for the slander of title cause of action pursuant to [the Retainer Agreement] or Utah Code Ann. § 78B-5-826.

Because our review of the Reciprocal Fee Statute involves statutory interpretation, we review an award or denial of attorney fees under Utah Code section 78B-5-826 for correctness. *See Bilanzich v. Lonetti*, 2007 UT 26, ¶ 10, 160 P.3d 1041.

¶22   The Reciprocal Fee Statute allows the prevailing party in a contract dispute to recover attorney fees if the contract awards fees to at least one of the parties:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.

Utah Code Ann. § 78B-5-826 (LexisNexis 2012). Thus, the text of the Reciprocal Fee Statute "provides that a court may award

costs and attorney fees to a prevailing party in a civil action if two main conditions are met." *Bilanzich*, 2007 UT 26, ¶ 14. "First, the civil action must be 'based upon any promissory note, written contract, or other writing.' And second, 'the provisions of the promissory note, written contract, or other writing' must 'allow at least one party to recover attorney's fees.'" *Id.* (quoting Utah Code Ann. § 78-27-56.5 (LexisNexis 2002) (renumbered as *id.* § 78B-5-826 (LexisNexis 2012))).

¶23 We must determine whether Rehn's civil action satisfies the first condition—whether it is based on a written contract or other writing. We agree with the district court that it is not.

¶24 Rehn identifies the Retainer Agreement as the relevant writing. But Rehn's suit was not based on the Retainer Agreement. On the contrary, his Complaint asserts that he "did not have any agreement with SSC for legal services."

¶25 We addressed a similar circumstance in *McQueen v. Jordan Pines Townhomes Owners Association*, 2013 UT App 53, 298 P.3d 666, *overruled in part on other grounds by Bank of America v. Adamson*, 2017 UT 2, ¶¶ 31–33. There, a condominium homeowners' association, pursuant to the condominium declaration, placed a lien on a condominium and completed a non-judicial foreclosure. *Id.* ¶ 3. The condominium owner responded with quiet title and slander of title actions. *Id.* ¶ 4. He prevailed on the quiet title action and sought an award of attorney fees based on a provision in the condominium declaration and the Reciprocal Fee Statute. *Id.* ¶¶ 4, 6. The district court denied the fee award, and this court affirmed. *Id.* ¶¶ 6, 28. We concluded that the quiet title action was not based on a breach of the condominium declaration, "even though the two may be related." *Id.* ¶ 25. "The principal purpose behind the quiet title action," we noted, "was to establish rightful ownership of the condominium unit, not to enforce the condominium declaration," even though "part of the quiet title

litigation below involved analysis of the condominium declaration . . . ." *Id.*

¶26     We see the present case in the same light. Rehn's slander of title action did not seek to enforce or invalidate the Retainer Agreement. That document supported Christensen's defense to Rehn's slander of title and quiet title claims, just as the condominium declaration supported the homeowners' defense to McQueen's slander of title and quiet title claims. But neither document served as the basis for the slander of title or quiet title claims.

¶27     *Hooban v. Unicity International Inc.*, 2012 UT 40, 285 P.3d 766, upon which Rehn relies, does not require a contrary result. In *Hooban* our supreme court held that a "party is entitled to reciprocal fee-shifting by statute 'when the provisions' of a contract would have entitled at least one party to recover its fees had that party prevailed 'in a civil action based upon' the contract." *Id.* ¶ 32 (quoting Utah Code Ann. § 78B-5-826). But the alignment of the parties in *Hooban*, as well as in the later case *Insight Assets, Inc. v. Farias*, 2013 UT 47, 321 P.3d 1021, upon which Rehn also relies, varies from the present case in a way that matters under the Reciprocal Fee Statute. In those cases, the plaintiff brought an action based on a writing, the defendant asserted that the writing was unenforceable, and the defendant prevailed. The Reciprocal Fee Statute applied because the defendants successfully defended against a civil action based on a writing containing an attorney-fee provision. But in the present case, as in *McQueen*, the plaintiff prevailed in a civil action that was not based on a writing; only Christensen's defense and counterclaim relied on a writing.

¶28     And Rehn did recover the attorney fees he incurred in responding to Christensen's counterclaim. Unlike Rehn's claims, Christensen's counterclaim was based on the Retainer Agreement. The Retainer Agreement included an attorney-fee provision that allowed the prevailing party to recover attorney

fees "[i]n the event legal action is taken to enforce this agreement." Rehn recovered his fees incurred in defeating Christensen's counterclaim because Christensen's counterclaim, though non-meritorious, qualified as a civil action based on a writing containing an attorney-fee provision. *See Hooban*, 2012 UT 40, ¶ 32.

¶29    In sum, we affirm the district court's denial of Rehn's request for an award of attorney fees incurred in prosecuting his slander of title claim under the Reciprocal Fee Statute.

B.    Equitable Award of Attorney Fees

¶30    Rehn also contends that the district court "abused its discretion by failing to consider an attorney's malice towards his own client as an aggravating factor in considering an equitable award of attorney fees and costs."[1]

¶31    "In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148, *abrogated on other grounds by Utahns For Better Dental Health-Davis, Inc. v. Davis County Clerk*, 2007 UT 97, ¶ 6, 175 P.3d 1036. "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest[s] of justice and equity." *Id.* (alteration in original) (citation and internal quotation marks omitted). "This power is part of the original authority of the chancellor to do equity in a particular situation." *Id.* (citations and internal quotation marks omitted). "Courts have exercised that inherent power in several categories of cases." *Stewart v.*

---

1. In asserting this claim, Rehn invokes the court's equitable powers; he does not rely on Utah Code section 78B-5-826 (LexisNexis 2012).

*Utah Public Service Comm'n*, 885 P.2d 759, 782 (Utah 1994). The category most relevant here includes situations where "a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting James W. Moore et al., *Moore's Federal Practice* ¶ 54.77 (2d ed. 1972)).

¶32 "[T]he appropriate standard for reviewing equitable awards of attorney fees is abuse of discretion. When a court awards attorney fees pursuant to statute or contract, it does so in recognition of a party's legal right to an award." *Hughes*, 2004 UT 22, ¶ 20. "In contrast, a court making an equitable award of fees is concerned not with a party's legal entitlement to an award, but with the equities. In other words, the court must ascertain whether the equities of a given case justify the use of its inherent and discretionary power to award fees." *Id.*

¶33 Rehn argues that the record here demonstrates extreme bad faith and argues that an "attorney who lies to his own client and undertakes malicious acts against his own client is guilty of a particularly repugnant act." Specifically, Rehn argues that Christensen "intentionally falsified a lien against his own client's property," recorded the lien "without notifying the client," later "lied to his client about the purpose of the lien in order to lull the client into complacency," and finally tried "to exhaust his former client in litigation in an effort to extract a pound of flesh."

¶34 Christensen responds that the district court did not ignore any relevant facts or otherwise abuse its discretion. He notes that the district court "sat through trial and listened to witness testimony, . . . weighed the equities[,] and saw no reason to award Rehn his attorney fees." Christensen further argues that "the debt in [Christensen's] lien notice was not imaginary," but that Rehn owed Christensen "tens of thousands of dollars that he never paid."

¶35 The district court declined to exercise its equitable powers in this case on the ground that the jury in the slander of title case

had already awarded Rehn his fees for removing the cloud on his title in the quiet title action:

> Although the jury found that the Defendants acted with malice when they recorded the subject lien, the Court does not find that the facts of this case distinguish it from other slander of title cases such that justice requires an award of attorney fees in addition to those already awarded by the jury, which the jury determined to be reasonably necessary to remove the cloud of title from Mr. Rehn's property.

Rehn's challenge to the district court's ruling does not refute or even acknowledge the court's stated rationale for that ruling—that equity did not require the court to augment the jury's damage award in Rehn's slander of title case, which included fees incurred in removing the wrongfully filed lien. This omission is fatal to his appellate claim. No appellate argument that ignores the primary rationale for the lower court's ruling can succeed in demonstrating that the ruling exceeded the limits of the law. *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375 (rejecting an appellate challenge on the ground that it failed to address the basis of the district court's ruling).

C.    Fees on Appeal

¶36    Rehn requests an award of attorney fees on appeal on the ground that the Retainer Agreement awards attorney fees to the "prevailing" party. "'[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal.'" *Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 39, 297 P.3d 38 (alteration in original) (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998)). Because Rehn did not receive attorney fees

below and because he does not prevail on appeal on that question, he is not entitled to fees reasonably incurred on appeal.

## II. Christensen's Cross-Appeal

### A. Summary Judgment on Slander of Title

¶37 Christensen contends that the district court "erred in granting summary judgment in favor of Rehn on the first two elements of [Rehn's] slander of title" claim. Specifically, Christensen argues that this court should reverse the slander of title judgment because Christensen held "an attorney's lien, a consensual lien, or both" against the Property. In the alternative, Christensen argues that summary judgment was inappropriate because he "did not actually know [his] claim to a lien was false."

¶38 Rehn responds that "[w]hether Christensen possessed an attorney's lien or a consensual lien is irrelevant because . . . the first two elements of a slander of title were established by hard evidence . . . that [the Lien] contained numerous false statements." Rehn also argues that "Christensen had no right to record [the Lien] against [the Property]" in the first place because the Property was not "connected with" Christensen's representation of Rehn—a required element for an attorney's lien.

¶39 "To prove slander of title, a claimant must prove that (1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages." *First Security Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256–57 (Utah 1989). Before trial, the district court granted Rehn partial summary judgment, ruling that undisputed facts established the first two elements of Rehn's slander of title claim—that Christensen had published a

slanderous statement disparaging Rehn's title to the Property and that the statement was false.

¶40 We review a district court's grant of summary judgment for correctness, giving no deference to the lower court's legal conclusions. *Dillon v. Southern Mgmt. Corp. Retirement Trust*, 2014 UT 14, ¶ 21, 326 P.3d 656. We review "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," Christensen. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

¶41 Because we conclude that Christensen did not possess a valid lien against the Property, we affirm the district court's ruling that Christensen's lien notice constituted a false statement that disparaged Rehn's title.

1.    Christensen held no attorney's lien on the Property.

¶42 Christensen first argues that he "held a valid attorney lien against Rehn because there was a connection between [the Property] and Christensen's representation of Rehn in the divorce and divorce appeal." Christensen's claim of an attorney's lien on the Property rests on that connection.

¶43 In Utah an attorney's lien arises by operation of law for the balance of compensation due from a client on any money or property owned by the client that is "the subject of or connected with" legal work performed for the client:

> (2) An attorney shall have a lien for the balance of compensation due from a client on any money or property owned by the client that is the subject of or connected with work performed for the client, including:

>     (a) any real, personal, or intangible property
> that is the subject of or connected with the work
> performed for the client; . . . .

Utah Code Ann. § 38-2-7(2)(a) (LexisNexis Supp. 2016) (Attorney's Lien Statute).

¶44    The district court ruled that the undisputed evidence demonstrated the lack of a connection between Christensen's legal work and the Property. The vast majority of the legal work Christensen performed related to Rehn's divorce, and, as the divorce court found, no real property was at issue in the divorce. In fact, Rehn owned no real property at the time of the divorce; he began renting the Property six weeks before the divorce trial and did not purchase it until three years after the divorce.

¶45    Christensen alleges that he advised Rehn to wait until after the divorce to purchase the Property. Rehn disputes that this conversation took place. But viewing the facts in the light most favorable to Christensen, the district court ruled that at most Christensen "provided $30.00 of billable time work that could arguably be related to a decision by Mr. Rehn to purchase [the Property at] some date in the future."

¶46    We hold that, as a matter of law, the Property was not connected with the legal work Christensen performed for purposes of the Attorney's Lien Statute. An attorney's single comment concerning property not at issue in the divorce and not owned by the client, made in the course of performing extensive divorce-related work for the client, is too tenuous to connect the legal work to the Property. If this gossamer thread satisfied the statutory requirement for a connection, the requirement would almost cease to exist. A single word of advice could support a lien encompassing a client's entire estate.

¶47    Christensen relies on *Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, 329 P.3d 46, another attorney's lien case. There, a

farm worker was injured while driving a tractor on or near his employer's farm and sued the employer. *Id.* ¶ 2. When the employer failed to pay its attorney, the attorney filed a lien on the farm. *Id.* ¶ 3. The employer sued, claiming the lien violated the Wrongful Lien Act, Utah Code Ann. § 38-9-7 (LexisNexis 2010) (renumbered as *id.* § 38-9-205 (LexisNexis 2014)). *Id.* ¶ 4. On appeal, this court held that, although the district court might ultimately conclude that the worker's compensation matter was not "connected with" the employer's property and thus that the attorney's lien was unenforceable, the attorney at least had a "plausible claim" that his work was connected with the farm, and therefore the lien was not wrongful for purposes of the Wrongful Lien Act. *Bay Harbor Farm*, 2014 UT App 133, ¶ 13.

¶48 *Bay Harbor Farm* does not support Christensen's argument. For one thing, the legal work in *Bay Harbor Farm* bore a closer connection to the farm than Christensen's legal work here does to the Property—at the very least, the employer in *Bay Harbor Farm* owned the subject property at the time of the legal work. Furthermore, in that case we drew no conclusion about the sufficiency of the actual connection between the attorney's work and the subject of the lien. We merely noted that, even if the lien might ultimately prove unenforceable, "an expedited hearing under the Wrongful Lien Act is not the right vehicle for analyzing the lien's enforceability under the attorney's lien statute." *Id.* ¶ 11.

¶49 Here, because the Property was not "the subject of or connected with" Christensen's representation of Rehn, no attorney's lien arose on the Property by operation of the Attorney's Lien Statute. Therefore, that statute presents no bar to the district court's conclusion that Christensen's lien constituted a false statement disparaging Rehn's title to the Property.

2.    Christensen held no consensual lien on the Property.

¶50    Christensen next argues that his notice of lien was neither false nor disparaging, because he held a consensual lien pursuant to the Retainer Agreement. The Retainer Agreement stated that HNC was entitled to a lien on Rehn's residence and other property, as permitted by Utah law:

> [HNC] shall be entitled to a lien for services rendered including a lien on your residence, other real property or any subsequent settlement or judgment, as permitted [sic] the laws of the State of Utah or any other state where services are provided, in the event the bill has not been paid in full with [sic] thirty (30) days of billing.

Christensen argues that by this provision Rehn consented in advance to the filing of the Lien.

¶51    Rehn responds that "Christensen judicially admitted there was no consensual lien and subsequently confirmed that judicial admission," and in any event "[t]he Lien itself demonstrates that Christensen construed [the Retainer Agreement] as only referencing the attorney's statutory lien right."

¶52    The district court read the Retainer Agreement to refer to the law firm's "right to record a lien pursuant to Utah's attorney lien statute." Further, the court stated that the fact that Christensen had "judicially admitted that there was no contractual right to record a lien" reinforced the court's interpretation of the Retainer Agreement as referring to a statutory lien, not creating a contractual lien. Without determining whether Christensen judicially admitted that no consensual lien existed, we hold that the Retainer Agreement did not create a consensual lien.

¶53    Our conclusion that the Retainer Agreement did not create a consensual or contractual lien rests first on the Retainer Agreement itself. "When interpreting a contract, we first look at the plain language to determine the parties' meaning and intent." *Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶ 64, 266 P.3d 671. "If the contract is ambiguous, we seek to resolve the ambiguity by looking to extrinsic evidence of the parties' intent." *Id.* "If extrinsic evidence does not resolve the ambiguity and uncertainty remains, *only then* will we resolve the ambiguity against the drafter." *Id.* Here, neither party relies on extrinsic evidence of the parties' intent. Accordingly, we will construe the Retainer Agreement by looking first at the text of the document to determine the parties' intent, and we will resolve any ambiguities against the drafter, Christensen.

¶54    The Retainer Agreement does not contain words of consent or agreement such as, "By signing this paragraph, you agree to grant immediately a consensual lien against your present interest." *See Dahl v. Dahl*, 2015 UT 79, ¶ 189. Rather, it states that Christensen's firm "shall be entitled to a lien for services rendered . . . as permitted by the laws of the State of Utah." Christensen does not identify the laws referred to, but argues that the phrase allows "any lien that is not illegal." Rehn argues that the phrase "laws of Utah" refers to the Attorney's Lien Statute. We read the Retainer Agreement as Rehn does. A term in an engagement letter stating that a lawyer is *entitled* to a lien *by law* is more reasonably read as a disclosure to the client of the attorney's rights under the Attorney's Lien Statute than as a mutual agreement of the parties to a consensual lien. Furthermore, to the extent the provision is ambiguous, we construe it against Christensen.

¶55    In addition, the text of the notice of lien cited the Attorney's Lien Statute, not the Retainer Agreement, as the basis for the Lien:

> [T]he undersigned holds and claims a lien by virtue of the provisions of Section 78-51-41, Utah Code Ann., 1953, which entitles the undersigned to the lien described above.

Consistent with the Lien's language, Christensen admitted in his deposition that he drafted the notice of lien based on the Attorney's Lien Statute, not the Retainer Agreement.

¶56 Because the Retainer Agreement, the notice of lien, and Christensen himself all indicate that Christensen relied on the Attorney's Lien Statute rather than a contractual basis for the Lien, we hold that Christensen did not have a consensual lien against the Property.

3. The Lien contained false statements.

¶57 Christensen last argues that "even if there were scrivener's errors in the notice of lien, they were not sufficient to support a judgment against Appellees for slander of title because the lien, whether an attorney lien or a consensual lien, was still enforceable." According to Christensen, "The misstatements in the notice should not give rise to a slander of title claim where a lien exists." "The key," he maintains, "is that [Christensen] held a lien and claimed to hold a lien."

¶58 Because we have determined that Christensen did not hold either an attorney's lien or a consensual lien on the Property, this argument fails. *See supra* ¶¶ 49, 56.

B. Directed Verdict on Malice

¶59 Christensen also contends that "[t]he district court should have granted Appellees' motion for a directed verdict on the issue of malice because Rehn failed to establish that Christensen acted with malice." This is so, Christensen argues, because Rehn "must establish that the defendant had actual knowledge that

the statements at issue were false. . . . However, Rehn failed to present evidence showing that Christensen had actual knowledge that he held no right to a lien against Rehn's property." Christensen admits that the notice of lien contained "some scrivener's errors," but argues that "Rehn did not produce evidence that Christensen knew he had no lien against Rehn's property."

¶60 Rehn responds by arguing that malice can be implied under Utah law, and that "the trial record is chock full of evidence that Christensen knew the Lien was unenforceable."

¶61 "Under Utah law, a party who moves for a directed verdict has the very difficult burden of showing that no evidence exists that raises a question of material fact." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 12, 82 P.3d 1064 (citation and internal quotation marks omitted). And when reviewing a challenge to a trial court's denial of a motion for directed verdict, "we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict." *Id.* (citation and internal quotation marks omitted).

¶62 "A claim for slander of title requires proof of four elements: (1) publication of a slanderous statement, (2) the statement must be false, (3) the statement must be made with malice, and (4) the statement must cause special damages to the plaintiff." *Neff v. Neff*, 2011 UT 6, ¶ 79, 247 P.3d 380. "[F]or a slanderous statement to be malicious, the defendant must have actually known that it was false or misleading." *Dillon v. Southern Mgmt. Corp. Retirement Trust*, 2014 UT 14, ¶ 36, 236 P.3d 656. However, "malice may be implied where a party knowingly and wrongfully . . . publishes something untrue or spurious . . . under circumstances that it should reasonably foresee might result in damage to the owner of the property." *Id.* (citation and internal quotation marks omitted).

¶63 Here, viewing the evidence and all reasonable inferences therefrom in the light most favorable to Rehn, we agree with the district court that reasonable minds could conclude that Christensen's false statements were made with malice. For example, the Lien incorrectly stated it was an "amended" lien, whereas it was in fact the original notice of lien. Second, the Lien incorrectly stated that the Property was the "subject" of Christensen's representation of Rehn, despite the Property not being involved in the divorce, *see supra* ¶ 48. Third, the Lien incorrectly stated the Property was awarded to Rehn in the original divorce action, when it was not—Rehn did not even own the Property until three years after the divorce, and the divorce court specifically stated that no real property was at issue. Fourth, the Lien incorrectly stated that 1995 rather than 1996 was the year Rehn retained Christensen. And finally, the Lien incorrectly cited a superseded section of the Utah Code which purportedly authorized the Lien when, at the time, the cited section no longer supported the stated proposition because the section number had been changed.

¶64 A jury could reasonably conclude that Christensen made these false statements knowingly for the purpose of making an invalid lien appear valid. Therefore, the district court properly denied Christensen's motion for a directed verdict.

C.     Post-trial Motions on Attorney Fees

¶65 Finally, Christensen contends that the district court erred in denying his combined motion for judgment notwithstanding the verdict (JNOV), motion to alter or amend judgment, and motion for new trial. The motions all asserted that "the attorney fees awarded [to Rehn] were not reasonably necessary to remove [the Lien]." In support, Christensen argues that "slander of title attorney fees are per se not eligible as slander of title damages," and that "[m]any portions of Rehn's attorney fees were per se not reasonably necessary to remedy [the Lien] disparaging the

title to Rehn's property." Christensen asked the district court to reduce the jury's determination of damages from $77,752.29 to $20,000. However, on appeal Christensen acknowledges that "there was testimony at trial that the amounts were reasonable and thus there exists a basis in evidence to support the jury's determination."

¶66    Rehn responds that "the jury was directed to determine if Rehn's attorney fees were reasonably necessary," and that Christensen "failed to present any other evidence suggesting that the fees were unreasonable." In Rehn's view, "[b]ecause the only evidence provided at trial supported the reasonableness of Rehn's attorney fees, and no evidence supported a contrary finding, substantial evidence precluded the trial court from granting Christensen's Motion for a JNOV."

¶67    In denying Christensen's motions, the court explained that the jury was properly instructed on the law and that Christensen did not object to those jury instructions. The court next explained that Rehn "presented evidence of his claimed damages" through billing records and attorney testimony. The court noted that Christensen had cross-examined the attorney's testimony but did not call an expert of his own. Lastly, the court explained, "Before allowing the damages evidence to go to the jury, the Court made sure during pretrial proceedings that the damages evidence [Rehn] would present to the jury was not simply all attorneys' fees incurred in the whole case but, rather, just those fees that were incurred prior to the Court's summary judgment ruling clearing title." Thus, because "[t]here was competent evidence in the record to support the jury's verdict," the court denied Christensen's motion.

¶68    "[A] district court may grant a JNOV motion only if there is no 'basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination.'" *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 18, 309 P.3d 201 (quoting *Braithwaite v. West Valley*

*City Corp.*, 921 P.2d 997, 999 (Utah 1996)). We reverse a trial court's denial of a motion for a new trial "only if there is no reasonable basis for the decision." *Id.* ¶ 21 (citation and internal quotation marks omitted).

¶69 Attorney fees may be recovered as special damages in slander of title cases "if the fees are reasonably necessary to remedy the disparagement of the plaintiff's title." *Neff v. Neff*, 2011 UT 6, ¶ 79, 247 P.3d 380; *see also Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18. Here, the jury was instructed to award only those fees that were "reasonably necessary to remove the clouds on title":

> In slander of title cases, attorney fees may constitute recoverable damages if the fees incurred were reasonably necessary to remove clouds from a party's title to property. For instance, if it is reasonably necessary for a property owner to file a lawsuit in order to remedy defects in his title resulting from a slanderous statement affecting his title, any fees and costs incurred in that lawsuit up to the point in the lawsuit when title is cleared, that were reasonably necessary to remove the clouds on title are recoverable as damages in a slander of title case.

Christensen did not object to this instruction. Nor did he present testimony denying that Rehn's attorney fees were reasonably necessary to remedy Christensen's disparagement of Rehn's title.

¶70 Because the district court correctly instructed the jury to include only those damages "reasonably necessary" to "remove the clouds on [Rehn's] title," *see Neff*, 2011 UT 6, ¶ 80, and Rehn presented detailed billing records and attorney testimony as evidence to support the reasonableness of his fees, we cannot say that there was "no basis in the evidence . . . to support the jury's determination," *see ASC Utah*, 2013 UT 24, ¶ 18 (citation and

internal quotation marks omitted). Thus, we affirm the district court's denial of Christensen's motion.

CONCLUSION

¶71    For the foregoing reasons, the judgment of the district court is affirmed.

———————